In the Matter of JOHN WRIGHT, Appellant, v TOWN BOARD OF
THE TOWN OF TICONDEROGA et al., Respondents. (And
Another Related Proceeding).

Third Department, July 7, 1988

## APPEARANCES OF COUNSEL

*John Wright,* appellant *pro se.*

### OPINION OF THE COURT

KANE, J.

Petitioner commenced these two CPLR article 78 proceedings seeking to compel respondents to discharge certain allegedly unqualified police officers and certain constables of the Town of Ticonderoga, Essex County, and to cease certifying their salaries. Respondents are the Town Board of the Town of Ticonderoga (hereinafter the Board) and the Director of Personnel and Civil Service of Essex County (hereinafter the Director).

The first proceeding concerned, *inter alia,* the Board's action in November 1985 of passing a resolution to advertise a vacancy for the position of Chief of Police for the town police department. In April 1986, the Board provisionally appointed Horace Snow to the position, pending his successful completion of a competitive civil service exam. Petitioner objected to Snow's appointment, alleging in his petition that Snow had exceeded the tenure of a provisional appointee without taking a competitive examination as required by Civil Service Law § 65 (2), that Snow was unqualified and that the Board had followed improper procedures in advertising for the position and in certifying the lack of qualified candidates. Supreme Court denied petitioner's request for Snow's dismissal, concluding that the Board was not at fault and that any delay in Snow's taking the required exam was occasioned by the State Department of Civil Service. The court also found that Snow

satisfied the Board's minimum requirements for the position. We disagree.

Under Civil Service Law § 65 (2), a provisional employee is required to take a civil service exam within nine months of his appointment. While it may be true that Snow's continued provisional appointment without taking an exam was not the Board's fault, Supreme Court also stated that the position of Chief of Police "is not strictly a competitive class position under the New York Civil Service Law" and impliedly concluded that Snow did not have to take an exam in the first place. The court noted that Civil Service Law § 58 (3), which deals with qualifications of police officers, states that the term "police officer" does not "include a * * * chief of police". We are of the view, however, that Civil Service Law § 58 (3) goes no further than to exempt a Chief of Police from having to fulfill the requirements set forth in that statute. It does not exempt him from the requirement of a written competitive examination as set forth in Civil Service Law § 65 (see, Matter of Callahan v Poston, 79 Misc 2d 989).

Although Supreme Court did not address this issue, we also agree with petitioner's contention that the Board did not properly advertise for the vacancy. Civil Service Law § 50 (2) states that in announcing an examination, the examiner has to "advertise such examination in such manner as the nature of the examination may require". The Town Supervisor informed petitioner that the Board published its vacancy for the Chief of Police position only with the State Police and placed no advertisements for the position. However, those from local police departments, as well as those from the State Police, were eligible to apply. Furthermore, at the time of his appointment, Snow was a retired investigator for the State Police. Under Retirement and Social Security Law § 211 (2) (b) (3), before a retiree is permitted to serve, it must be shown that too few other qualified people applied. In fulfilling this requirement, the Board stated that the vacancy "was publicized through the news media & N.Y.S. Troopers Magazine". This information directly conflicts with the information given petitioner by the Town Supervisor.

Additionally, Snow's qualifications are questionable. The position he applied for required two years of supervisory experience and, in his application, Snow stated that he had such experience. However, the State Police informed petitioner that Snow was an investigator when he retired and that that was not a supervisory position. Also of note is the

fact that the position was listed as having a $20,000 annual salary, while the town's salary schedule listed it as $21,500. Although not a great discrepancy, this could have affected the pool of qualified applicants (see, Retirement and Social Security Law § 211 [2] [b] [3]). These combined irregularities, along with the discrepancies in the Board's advertising, serve to render Snow's appointment invalid. Supreme Court therefore erred in denying the first petition in this respect.

In the first proceeding, petitioner also sought the discharge of three part-time town police officers, George Bessette, Jr., Irven Fleury and Stanley Cobb. None of the three had taken or passed a competitive civil service examination or had been appointed from a civil service eligibility list. Supreme Court agreed that they had been improperly appointed and granted that part of the petition seeking their dismissal.[1] The Board complied with the court's decision and dismissed the officers on May 14, 1987. However, on May 20, 1987, the Board appointed the three men as part-time paid constables pursuant to Town Law § 39 and CPL 2.10, 2.20 and 2.30.

Petitioner then commenced the second proceeding again seeking the discharge of these three, arguing, inter alia, that as town constables they had improperly portrayed themselves as police officers. This second petition also sought the dismissal of the town's two full-time constables, Michael Whalen and Dennis Johnson, on the same grounds. In November 1985, Whalen and Johnson had been appointed as town police officers and, in October 1986, petitioner had commenced a CPLR article 78 proceeding claiming that they had not completed certain training courses as required by General Municipal Law § 209-q and 9 NYCRR 6020.2 (b) (1). Because the officers had one year to complete such courses, the petition was dismissed as premature by Supreme Court. This court affirmed the dismissal in Matter of Wright v Town Bd. (132 AD2d 794). While the October 1986 proceeding was pending, the Board, at a meeting held in November 1986, fired all unpaid town constables, vacated Johnson's and Whalen's appointments as police officers and reappointed them as town constables. Town constables are not subject to the training requirements of General Municipal Law § 209-q (23 Opns St Comp, 1967, at 582; 18 Opns St Comp, 1962, at 224). Supreme

---

1. Although petitioner indicated that the Director cross-appealed from this aspect of the Supreme Court's decision, no notice of appeal appears in the record and no arguments were submitted by respondents.

Court rejected petitioner's claims as to all five men and accordingly dismissed the second petition in its entirety.

■ Town Law § 20 (1) (b)[2] provides that in a town where a police department has been established, constables have powers and duties in "civil actions and proceedings only". The statute also prohibits a Town Board from paying a constable's salary and a constable is "entitled to collect the statutory fees allowed by law in such civil actions and proceedings" (Town Law § 20 [1] [b]). In the instant case, the Board set the salaries for all five men. It also specifically granted Bessette, Cobb and Fleury the power to act in criminal matters (see, CPL 2.20). While it did not specifically grant such powers to Johnson and Whalen, respondents did admit in their answer that these two officers were exercising such powers. In upholding the appointments, Supreme Court found that the Board had discretion in this area and that there were "special Civil Service Rules and Appendices adopted by Essex County * * * and approved by the N.Y. State Civil Services [sic] Commission, which apply to the individuals herein". In our view, the court's decision was in error and should, therefore, be reversed.

Although, as Supreme Court noted, Town Law § 20 (1) (b) begins with "[e]xcept as otherwise provided by law", this phrase modifies the first sentence and not the sentence at issue herein. Furthermore, upon our review of the "special Civil Service Rules" to which the court referred, it is clear that they do not deal with the facts of the instant case insofar as these rules are concerned with civil service matters from which constables are concededly exempt.

Supreme Court also characterized the constables as peace officers and, as such, they were vested with both civil and criminal powers as set forth in CPL 2.20. CPL 2.10 does include constables within the definition of a peace officer, but specifically limits its application by providing that its requirements apply "[n]otwithstanding the provisions of any general * * * law * * * to the contrary". Here, Town Law § 20 (1) (b) specifically limits a constable's powers to civil matters only. Therefore, the granting of criminal powers to the five men by the Board was in violation of Town Law § 20 (1) (b). Furthermore, since the Board was setting the salaries of the five men, this was also in violation of Town Law § 20 (1) (b).

---

2. It is not clear if the Town of Ticonderoga is a town of the first or second class. However, the provisions at issue in Town Law § 20 (1) (b) which apply to second-class towns are the same as Town Law § 20 (1) (a) which governs towns of the first class.

Finally, in the first proceeding, Supreme Court rejected petitioner's contention that Johnson should be dismissed for failing to comply with certain residency requirements. Insofar as we have determined that he should be dismissed for having been appointed in violation of Town Law § 20 (1) (b), this issue need not be addressed. However, were we to deal with the merits of this claim, we would agree with the court's decision that Johnson satisfied the necessary residence requirements.

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment entered May 5, 1987 modified, on the law, without costs, by reversing so much thereof as denied petitioner's request to discharge and cease the payroll certification of Horace Snow; petition granted to that extent; and, as so modified, affirmed.

Judgment entered August 17, 1987 reversed, on the law, without costs, and petition granted.