In the Matter of JOSEPH RILEY, as Town Supervisor of the Town of Clifton Park, et al., Appellants, v JOHN J. POK-LEMBA, as Commissioner of the New York State Division of Criminal Justice Services, et al., Respondents.

Third Department, April 22, 1993

APPEARANCES OF COUNSEL

*Karen M. Gazda,* Clifton Park, for appellants.

*Robert Abrams, Attorney-General,* Albany *(Siobhan S. Crary* and *Wayne L. Benjamin* of counsel), for respondents.

## OPINION OF THE COURT

HARVEY, J.

Petitioner Town of Clifton Park was formerly a second class town *(see,* Town Law § 10). The Town does not employ a municipal police force and has heretofore relied upon the Saratoga County Sheriff's Department and the State Police for its police protection. Nevertheless, since approximately 1927, the Town has employed at least one Town Constable. Petitioner Donald Berthiaume was appointed a Town Constable in 1957. In January 1970 the Town, which has a current population of approximately 33,000, changed its classification from a second class to a first class town pursuant to Town Law § 12. Thereafter, petitioner Ernest Green was appointed a Town Constable in 1974 and petitioners Vincent D. Bagnato, Daniel J. Bonesteel and Donald McCune were appointed Town Constables in 1988. All constables were paid on a part-time basis at an hourly rate. In September 1989, the Town Board "formalized" the position of Town Constable for the first time in Local Laws, 1989, No. 17 of the Town of Clifton Park. The duties of these Town Constables included protecting Town property, assisting the State Police and Sheriff's Department, and conducting accident scene crowd control. These duties did not include patrolling Town streets or participating in criminal investigations or arrests.

Subsequently, Bagnato, Bonesteel and McCune completed a basic training course for peace officers sponsored by the Greene County Sheriff's office. However, when these petition-

ers attempted to be certified as peace officers by respondent Division of Criminal Justice Services (hereinafter the Division), they were notified that they could not be certified as peace officers or be included in the Official Peace Officer Registry (hereinafter the Registry). Shortly thereafter the Division's Deputy Commissioner wrote to the Town stating the Division's intent to remove Berthiaume and Green, who had previously been registered as peace officers, from the Registry. Petitioners ultimately commenced this proceeding seeking to compel respondents to issue peace officer certificates to Bagnato, Bonesteel and McCune and to add their names to the Registry. Petitioners also sought to prohibit respondents from removing the names of Green and Berthiaume from the Registry. Supreme Court determined, *inter alia*, that the Town was prohibited by Town Law § 20 (1) (a) from appointing constables with peace officer status. The petition was dismissed and this appeal by petitioners followed.

Petitioners' principal contention on appeal is that Supreme Court erred in concluding that the Town was prohibited from employing constables as peace officers by virtue of Town Law § 20 (1) (a). We disagree. Town Law § 20 (1) (a) concerns first class municipalities, such as the Town in this case, and states in relevant part, that, "Every town of the first class shall have * * * as many *town policemen* and such other employees as the town board may determine necessary for the proper conduct of the affairs of the town" (emphasis supplied). This provision is in direct contrast to the language provided in the provision relating to second class municipalities, Town Law § 20 (1) (b), which states, in relevant part, that, "Except as otherwise provided by law, every town of the second class shall have * * * if there be no town police department, *as many constables* as the town board may determine necessary" (emphasis supplied). Notably, both Town Law § 20 (1) (a) and (b) contain essentially similar provisions allowing both first and second class towns to hire up to "four civil officers who shall possess all the powers and duties of constables in civil actions and proceedings only". This was allowed, however, only when such a town has an established town police department or, in the case of a first class town, if the town is a part of a county police district. There is no dispute in this case that petitioners are not relying on the latter provision to justify the Town's employment of Town Constables, nor could they because the employment of these individuals clearly did not

meet the qualifications for the hiring of constables contained in Town Law § 20 (1).*

Instead, the appropriate statutory language to consider in this case are the first two sentences of Town Law § 20 (1) (a) and (b), which, read together, specifically state that a second class town without a town police department has the power to hire constables without any restrictions as to their duties while no similar language is included in the section referring to first class towns. Town Law § 20 (1) (a) refers only to the ability of first class towns to hire town police officers. Petitioners argue that the Town is entitled to hire constable peace officers pursuant to the catch-all phrase at the end of the first sentence of Town Law § 20 (1) (a), stating that the Town can hire "such other employees * * * necessary for the proper conduct of the affairs of the town". Such an interpretation ignores the very specific language referring to constables in Town Law § 20 (1) (a) and (b) and would actually render the limiting language referring to the number and duties of constables useless (see, McKinney's Cons Laws of NY, Book 1, Statutes § 238). Given the presumption that the Legislature means every word it states, it is apparent that giving second class towns the unrestricted power to hire constables in certain circumstances and omitting such language in the section referring to first class towns is a clear indication that the Legislature meant for first class towns to be so excluded (see, McKinney's Cons Laws of NY, Book 1, Statutes § 240).

Although petitioners claim such a distinction is irrational, we cannot agree. The Town Law amply details the distinctions between first class and second class towns, the most important being the generally greater population of the former (see, Town Law § 10). Significantly, a first class town is subject to greater formalities and structure, presumably in recognition of their greater size and responsibilities to their citizenry (see generally, Town Law §§ 11, 12). Given this situation, it only follows that, regarding law enforcement matters, the Legislature recognized that once a town's size becomes too unwieldy or its enforcement problems become too difficult to be served by the more informal constabulary system, then the more appropriate course is for such a town to form its own police

---

* It is undisputed that the Town has no police department and it is unclear from petitioners' brief whether it is part of a county police district. Even if the Town does belong to a county police district, Town Law § 20 (1) (a) would still not give it the power to hire constables as peace officers (see, Matter of Wright v Town Bd., 139 AD2d 60, 64).

department so as to adequately serve the needs of its population. While the Town is perhaps reluctant to form its own police department for financial reasons, this factor does not obviate the clear implication for Town Law § 20 (1) (a) that the only appropriate internal law enforcement that should be taken by a first class town is through the formation of a town police department.

Any other interpretation of the language of Town Law § 20 (1) (a) read in conjunction with Town Law § 20 (1) (b) would render the Legislature's choice of language irrelevant. Accordingly, given the specific prohibition of constables as peace officers in first class towns, petitioners' citation to the general powers of a town to perform certain acts and functions is inapposite. Moreover, an examination of the exact language of the Town's Local Law No. 17 reveals no intention on the part of the Town to attempt to exercise its statutory authority to amend or supersede the Town Law (see, Municipal Home Rule Law § 10 [1] [ii] [d] [3]; § 22 [1]; see also, Kamhi v Town of Yorktown, 74 NY2d 423, 434-435; Turnpike Woods v Town of Stony Point, 70 NY2d 735, 738). Consequently, we find that Supreme Court did not err in concluding that the Town's actions were prohibited by Town Law § 20 (1).

Due to our resolution of the foregoing issue, exploration of the parties' remaining arguments is unnecessary.

WEISS, P. J., YESAWICH JR., MAHONEY and CASEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.