BA MAR, INC., Respondent, v COUNTY OF ROCKLAND, Appellant. (Action No. 1.)

JOHN G. GRESS, JR., et al., Appellants, v PUTNAM COUNTY, Respondent. (Action No. 2.)

Second Department, January 22, 1991

## APPEARANCES OF COUNSEL

*Ilan S. Schoenberger, County Attorney (Martin Hurwitz* of counsel), for appellant in action no. 1.

*Donald Tirschwell* for respondent in action no. 1.

*Robert Abrams, Attorney-General (O. Peter Sherwood, John Corwin* and *G. Nicholas Garin* of counsel), for the State of New York, *amicus curiae,* in action no. 1.

*Bond, Schoeneck & King (Richard L. Smith* of counsel), for appellants in action no. 2.

*William D. Spain, Jr., County Attorney (Bonnie Feinsiz* of counsel), for respondent in action no. 2.

OPINION OF THE COURT

BROWN, J.

■ ■ The primary issue presented on these appeals is whether certain local laws enacted by the Counties of Rockland and Putnam, which regulate the operation of mobile home parks, are either preempted by or inconsistent with State law. We hold that by enacting Real Property Law § 233, the State has preempted the field of mobile home park regulation. Moreover, we find that the local laws are inconsistent with Real Property Law § 233. Accordingly, the local laws are invalid.

I

In June 1989 Rockland County adopted Local Laws, 1989, No. 3 of the County of Rockland (hereinafter Rockland County Local Law No. 3), entitled "A local law requiring good cause to evict mobile home owners and protecting their right to sell their homes". As its title suggests, the legislation establishes the grounds upon which a mobile home park owner/operator can evict a mobile home owner, and places certain limitations on the owner/operator's power to deny a mobile home owner the right to sell his or her mobile home. In addition, the legislation contains provisions with respect to the continuance and renewal of leases, the imposition of penalties for its violation, and the manner in which the legislation is to be enforced. Similarly, earlier that year Putnam County adopted Local Laws, 1989, No. 1 of the County of Putnam, and in July 1989 amended it by adopting Local Laws, 1989, No. 9 of the County of Putnam (hereinafter referred to collectively as Putnam County Local Law No. 1). Like the legislation enacted in Rockland County, the Putnam County local law establishes the grounds in Putnam County upon which a mobile home owner can be evicted, limits the owner/operator's ability to restrict the mobile home owner's right to sell, and creates its own enforcement mechanism.

The plaintiff, Ba Mar, Inc. (hereinafter Ba Mar), is the owner and operator of a 148-unit mobile home park in the Town of Stony Point in Rockland County. In September 1989 Ba Mar commenced an action in the Supreme Court, Rockland County, seeking a judgment declaring Rockland County Local Law No. 3 to be unconstitutional, in violation of the Municipal Home Rule Law, and preempted by State statute. Ba Mar also asserted a cause of action to recover damages for inverse

condemnation, claiming that the adoption of Rockland County Local Law No. 3 effected an unconstitutional taking of property without due process of law by reducing the value of its mobile home park.

The plaintiffs John G. Gress, Jr., and Josephine Gress doing business as Mac's Mobile Court, Joseph F. Lois, Sr., and Joseph F. Lois, Jr., doing business as Post Road Mobile Home Park and Adrienne G. Tibbetts doing business as Brookside Mobile Home Park are owners of mobile home parks in the Towns of Brewster and Cold Springs in Putnam County. Similar to the plaintiffs in the Rockland County case, the Putnam County plaintiffs sought a judgment declaring invalid the local laws enacted by the County of Putnam on both preemption and inconsistency grounds. Their case was submitted to the Supreme Court, Putnam County, by means of a submission of the controversy pursuant to CPLR 3222.

The Rockland and Putnam County local laws were enacted, in part, based upon findings that the State law regulating mobile home parks, Real Property Law § 233, was ambiguous and inadequate to protect mobile home owners from arbitrary eviction and to protect the right of mobile home owners to sell their homes. In spite of the fact that the two local legislative enactments are identical in many respects, the Supreme Court in Rockland and Putnam Counties reached opposite conclusions as to whether the State had preempted the field of mobile home park regulation by enacting Real Property Law § 233, and whether the local laws were inconsistent with Real Property Law § 233. The Supreme Court, Rockland County, determined that the State had preempted the field of mobile home park regulation and that, in any event, the local law was inconsistent with the State Law; the Supreme Court, Putnam County held to the contrary.

We find both preemption and inconsistency and, accordingly, uphold the Supreme Court's finding in the Rockland County action and reverse the determination in the Putnam County action.

## II

Mobile home ownership is unique in that it combines aspects of both home ownership and tenancy. Most mobile home owners own their mobile homes but rent a site within a mobile home park upon which their home is situated. Although their homes are called "mobile", 96% of the so-called

"mobile homes" are never moved from their initial siting due to the high cost and physical difficulty of relocation. In addition, zoning for mobile homes is done on a local basis. If local authorities so require, mobile home owners must live within a mobile home park. In New York State, approximately 60% of all mobile homes are situated in mobile home parks. This being the case, these homeowners are subject to the authority of the owner/operator of the park in which they reside. Such a situation is conducive to a gross disparity in bargaining power between the homeowner and the park owner/operator, and the potential exists for exploitative conduct by park owners/operators. The Court of Appeals aptly summed up the situation as follows: "Mobile home owners are not apartment or condominium dwellers; nor are they campers. They have different needs and distinct concerns. Whatever the economic and qualitative benefits of year-round mobile home living, the fact remains that, nomenclature notwithstanding, the homes themselves are relatively immobile. Once 'planted' and 'plugged in', they are not easily relocated. Yet they lack the protective enclosure of apartment buildings. As a result, owners and operators of mobile home parks are in a unique position to take advantage of a more or less captive audience" (*Miller v Valley Forge Vil.*, 43 NY2d 626, 628-629). Nevertheless, mobile homes have become an attractive low-cost housing alternative for both the young and the elderly, and mobile home parks are rapidly increasing in number throughout New York State.

In 1973, based upon concerns that mobile home park owners/operators were engaging in a series of unfair practices including (1) the charging of a sales commission on the sale of a mobile home as a condition precedent to permitting a new tenant to remain in occupancy even though the owner/operator did not help effectuate the sale, (2) the eviction of tenants without justification or in reprisal, and (3) the imposition of unnecessary fees and arbitrary regulations and the nondisclosure of such fees and regulations, and in an effort to encourage the development of low-cost housing, the State Legislature enacted Real Property Law § 233 (the Mobile Home Owners Bill of Rights) (*see,* L 1973, ch 1012, § 1; L 1974, ch 973, § 1; Bill Jacket, 1973, ch 1012). Since 1974, the statute has been amended five times, most recently in 1989 (*see,* L 1989, ch 596, § 1). As it now reads, the statute regulates many, if not all, of the rights, duties, obligations and responsibilities of mobile home park owners/operators and those who reside in mobile

home parks. As the Court of Appeals has commented, "Viewed in its entirety, the statute imposes a commonsense rule of thumb: Inherent economic imbalance may not be exploited by park owners either through unfair monopolistic practices or by threat of eviction for failure to comply with burdensome park rules" *(Miller v Valley Forge Vil., supra,* at 629).

In order to appreciate the breadth of the State Legislature's effort to regulate the mobile home park field, one has but to examine the provisions of Real Property Law § 233. Subdivision (a) of the statute defines the basic terms "mobile home tenant", "mobile home owner", and "mobile home park". Subdivision (b) limits to five the grounds upon which a mobile home park owner/operator may evict a mobile home tenant. Subdivision (c) permits a mobile home tenant to raise as an affirmative defense the provisions of subdivision (b) if the owner/operator attempts to evict for other grounds. Subdivision (d) establishes the procedure to be followed in evicting a tenant.

The statute continues, in subdivision (e) thereof, to require that mobile home park owners/operators offer tenants the opportunity to sign a lease for a minimum of one year. Subdivision (f) establishes the guidelines under which the owner/operator may promulgate or modify mobile home park rules and regulations. Subdivision (g) contains several provisions relating to rents, fees, charges, and security deposits, including (1) the requirement that all rents and fees be reasonable, (2) the procedures to be used in increasing rents and charges, and (3) the requirement that security deposits be held in trust separate from the funds of the owner/operator. Subdivision (h) places restrictions on the owner/operator's ability to charge additional fees to those tenants installing electric or gas appliances and to require that tenants purchase certain equipment and services from the owner/operator, and prohibits the owner/operator from requiring a prospective mobile home owner to purchase the mobile home from the owner/operator or anyone he or she designates.

The sweep of the Legislature's protection of the mobile home tenant continues in Real Property Law § 233 (i), which prohibits, under certain conditions, a mobile home park owner/operator from denying a tenant the right to sell his or her mobile home or requiring that the tenant or a subsequent purchaser of the mobile home remove the mobile home from the park. While subdivision (i) does permit an owner/operator

to reserve the right to approve any purchaser, such approval may not be unreasonably withheld. Subdivision (i) also prohibits an owner/operator from exacting a sales commission unless he or she has acted as an agent. Subdivision (j) establishes the conditions upon which an owner/operator may enter a mobile home without permission and subdivision (k) requires that an owner/operator provide reasonable notice for any planned disruption of necessary services. Subdivision (l) requires that an owner/operator designate an agent to insure the availability of emergency response actions in matters affecting health, safety, and well-being.

Real Property Law § 233 (m) establishes that every lease or rental agreement is deemed to provide certain warranties, including that of habitability. Subdivision (n) prohibits an owner/operator from serving a notice to quit or altering the terms of the tenancy in retaliation for good-faith complaints or actions by a tenant to secure compliance with government regulations or the terms of his or her lease, or for belonging to a mobile home tenant's organization. Subdivision (o) contains provisions relating to the tenants' right to recover attorney's fees in actions or summary proceedings pursuant to Real Property Law § 234. Subdivision (p) provides that a owner/operator shall be guilty of a violation if the owner/operator has agreed to provide water, heat, light, power, etc., and willfully and without just cause, fails to do so.

Subdivision (q) requires the owner/operator to give receipts for rents, fees, charges, etc. Subdivision (r) contains provisions relating to late charges. Subdivision (s) states that it is a violation for an owner/operator to restrict occupancy of a mobile home by express lease terms or otherwise. Subdivision (t) contains several provisions relating to the subleasing and assignment of leases. Subdivision (u) allows a tenant to commence an action to recover damages for an owner/operator's violation of any requirement of the statute. And, finally, subdivision (v) places powers of enforcement of the statute's provisions in the New York State Commissioner of Housing and Community Renewal, and requires owners/operators to file an annual registration statement with the Commissioner.

Clearly, it cannot be argued that Real Property Law § 233 is anything less than a comprehensive effort by the State Legislature to regulate the relationship between mobile home park owners/operators and the owners of the mobile homes located in their parks.

## III

Local governments have been delegated broad powers to enact local legislation consistent with the State Constitution and general State laws relating to the welfare of its citizens *(see,* NY Const, art IX, § 2; Municipal Home Rule Law § 10). The doctrine of preemption represents a fundamental limitation on this delegation by prohibiting local legislation in an area that the State has clearly evinced a desire to preempt *(see, Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 377; *Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 96-97; *People v Town of Clarkstown,* 160 AD2d 17). Under this doctrine, even in the absence of an express conflict, a local law which regulates subject matter in a field which has been preempted by State legislation is deemed inconsistent with "the State's transcendent interest" *(Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377), and is thus invalid. "Such local laws, 'were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns' *(Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 97)" *(Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377).

On the other hand, the mere fact that both the State and local governments seek to regulate the same subject matter does not, in and of itself, render the local legislation invalid on preemption grounds *(see, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, *supra; Dougal v County of Suffolk,* 102 AD2d 531, 532, *affd* 65 NY2d 668). In order for the preemption doctrine to prohibit local legislation in a particular area there must be an intent on the part of the State to occupy the entire field *(see, Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377; *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs,* 74 NY2d 761; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99). That intent, however, need not be express; it "may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area *(see, Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347)" *(Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377).

■ While there is no express provision in Real Property Law § 233 indicating a desire by the State Legislature to preempt the field of mobile home legislation, we conclude that

the State intended to preempt this area by enacting a comprehensive and detailed regulatory scheme. As can be seen from the summary of the statute which we have set forth, the scope of Real Property Law § 233 is extremely broad, covering nearly every aspect of mobile home park life. The statute itself is detailed and comprehensive. A particularly strong indicator of the State's intent to preempt is found in the mandate of Real Property Law § 233 (v) (added by L 1988, ch 261, § 30), which requires that all mobile home park owners file an annual registration statement with the State. That registration statement must contain: (1) the names of all persons owning an interest in the park, (2) the names of all tenants, (3) all services provided by the owner/operator, and (4) a copy of all current mobile home park rules and regulations. Real Property Law § 233 (v) also provides for the enforcement of the statute by the Commissioner of Housing and Community Renewal, a State official with State-wide jurisdiction. Real Property Law § 233 (v) evinces a clear intent by the State to provide State-wide uniformity in this area. In fact, the entire legislative history surrounding the enactment and amendment of Real Property Law § 233 demonstrates an increasing desire on the part of the State Legislature to not only expand the protections afforded to mobile home owners, but to increase enforcement of the statute's provisions (see, Mobile Home Parks: A Joint Report of the New York State Attorney-General and New York State Consumer Protection Board [June 1984]).

Moreover, Real Property Law § 233 is not the only State law regulating mobile home parks and mobile homes. For instance, Real Property Law § 236 prohibits discrimination against lessees in mobile home parks solely on the ground that the lessee has children. General Business Law §§ 720-724 provides for warranties in the sale of mobile homes. Private Housing Finance Law article XX, which was enacted for the express purpose of addressing the shortage of decent affordable housing for persons of low and moderate income (see, Private Housing Finance Law § 1120), establishes a comprehensive scheme for the financing of mobile home park cooperative projects. Thus, there exists strong evidence that the State has intended to occupy the entire field of mobile home park and mobile home regulation.

The fact that Real Property Law § 233 refers to existing local laws does not alter our conclusion. Only two clauses, section 233 (n) (1) (a) and (b), actually give some legitimacy to

local laws. The clauses of subdivision (n) (1) essentially state that an owner/operator may not retaliate for a tenant's assertion of rights under any "health or safety law, regulation, code, or ordinance, or any law or regulation which has as its objective the regulation of premises used for dwelling purposes" (Real Property Law § 233 [n] [1] [a]). We recently rejected a similar claim that State reference to such types of regulation negates preemption (see, *People v Town of Clarkstown*, 160 AD2d 17, *supra*). As we noted there, the State's reference to local regulations "merely establishes an adequate means of insuring that ancillary concerns such as safety, fire, and health standards are met, unobtrusive to State goals" *(People v Town of Clarkstown, supra*, at 24). The fact that there is one provision of the State law *(see,* Real Property Law § 233 [d] [3]) which includes language stating that its regulations apply notwithstanding any local laws, does not demonstrate that the State did not intend to preempt all other local laws.

## IV

■ Even if we were to conclude that the State has not evinced a desire to preempt the field of mobile home park regulation, we would find that the numerous inconsistencies between Real Property Law § 233 and the local laws at issue render the latter invalid. A local law is obviously inconsistent with a State law where there is an express conflict between the two *(see, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 96-97, *supra; New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *affd* 487 US 1). However, there need not be an express conflict between a State and local law to render the local law inconsistent, and, therefore, invalid. Indeed, inconsistency has been found where local laws prohibit "what would be permissible under the State law" *(see, Wholesale Laundry Bd. of Trade v City of New York,* 17 AD2d 327, 330, *later appeal* 18 AD2d 968, affd 12 NY2d 998) or impose "prerequisite 'additional restrictions' " *(see, F. T. B. Realty Corp. v Goodman,* 300 NY 140, 148) on rights under State law, so as to inhibit the operation of the State's general laws *(see, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 108, *supra).*

At the outset, it is interesting to note that there are numerous provisions in the local laws at issue which are identical with the State law, leading one to conclude that the

local laws were specifically designed to inhibit the operation of the State's general laws where they differed. With respect to the inconsistencies themselves, they are numerous. Some of the more significant examples follow.

As mentioned above, a primary concern of the local laws addresses the grounds upon which a tenant may be evicted *(see,* Rockland County Local Law No. 3, § 3; Putnam County Local Law No. 1, § 3). Conspicuously absent from these grounds, however, is the problem caused by the "holdover tenant". Real Property Law § 233 (b) (1) specifically provides that a mobile home park owner/operator may evict a mobile home tenant who continues in possession of the premises after the expiration of his term without permission. When Real Property Law § 233 was originally enacted it did not contain such a provision *(see,* L 1973, ch 1012, § 1). This omission was one of the main reasons why the original legislation was quickly repealed and replaced with a new enactment *(see,* L 1974, ch 973, § 1) allowing for such evictions. Since the local laws limit the grounds for eviction to only those enumerated, the absence of a provision dealing with "holdover tenants" in the local laws would directly inhibit the operation of State law.

Another example of inconsistency between the State and the local laws is found in the fact that both local laws, as well as Real Property Law § 233, allow for eviction where the tenant has defaulted in the payment of rent *(see,* Rockland County Local Law No. 3, § 3 [a] [i]; Putnam County Local Law No. 1, § 3 [a]). However, the local laws also provide that upon *"tender"* or *"payment"* of delinquent rent, an action instituted for nonpayment of rent shall terminate, whereas Real Property Law § 233 (b) (2) provides that upon *"acceptance"* of such rent such an action shall terminate. Thus, implied under the State law is the right to reject late payment and continue eviction, a right which would be eliminated by the local laws.

Further inconsistency is found in the fact that while both local laws create an additional ground for eviction not granted under Real Property Law § 233, namely, if the owner/operator proposes a change in the use of the land provided the tenants are given six months written notice *(see,* Rockland County Local Law No. 3, § 3 [a] [vi]; Putnam County Local Law No. 1, § 3 [e]), Real Property Law § 233 places no restriction on changes in the use of land.

Additionally, section 3 (b) of the Rockland County enact-

ment requires that a mobile home owner be offered a "continuance" or "renewal" of a lease upon the expiration of the term so long as the mobile home owner has complied with the terms of the lease and the rules of the park, while Real Property Law § 233 (b) (1) specifically provides that upon the expiration of the lease term, the mobile home park owner/operator may commence a proceeding to evict the tenant. Moreover, Real Property Law § 233 (e), entitled "Leases", only requires an owner/operator to offer its tenants, prior to occupancy, a minimum of a one-year lease. It mentions nothing about continuances or renewals.

Both local laws prohibit an owner/operator from requiring an increased rental for a mobile home occupying a lot in a mobile home park solely on the ground of its age, size and/or model (see, Rockland County Local Law No. 3, § 4 [a]; Putnam County Local Law No. 1, § 4 [a]), whereas Real Property Law § 233 (g) (1) permits the owner/operator to charge an increased rental fee based upon an increase in services actually rendered.

There are other differences as well. Overall, the local laws significantly seek to shift in favor of the tenant the balance between owner/operator and tenant as established by the State Legislature in its enactment of Real Property Law § 233. Accordingly, we conclude that the local laws are not only preempted by State law, but that they are inconsistent therewith.

### V

Finally, as noted above, in the *Ba Mar* case the plaintiff also sought damages based on a claim of inverse condemnation. Since we now declare the Rockland County legislation to be invalid, any claim for subsequent damages is moot. To the extent that such a claim existed after the enactment of Rockland County Local Law No. 3 and prior to our decision, we find that the plaintiff has failed to raise any triable issue of fact that the enactment of Rockland County Local Law No. 3 constituted a taking of property. While some courts have found the existence of issues of fact as to whether a transfer of a possessory interest occurs when local governments have attempted to regulate mobile home parks (see, *Hall v City of Santa Barbara*, 833 F2d 1270, *cert denied* 485 US 940; *Pinewood Estates v Barnegat Twp. Leveling Bd.*, 898 F2d 347), those cases involved regulations which, in effect, granted to

tenants a perpetual lease with strict limitations on the ability of owners/operators to increase rents. While Rockland County Local Law No. 3 does require the continuance and renewal of site leases, it makes no effort to restrict rent increases. Thus, tenants were not given any economic interest in their site which could be marketed to others *(see, Hall v City of Santa Barbara, supra,* at 1276-1277), and no taking occurred *(cf., Seawall Assocs. v City of New York,* 74 NY2d 92).

MANGANO, P. J., KOOPER and LAWRENCE, JJ., concur.

Ordered that the order in action No. 1 is modified, on the law, by deleting the provision thereof denying that branch of the defendant's cross motion which was for a partial summary judgment dismissing the plaintiff's second cause of action, and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Rockland County, for the entry of an appropriate judgment; and it is further,

Ordered that the judgment in action No. 2 is reversed, on the law, with costs, and it is declared that Local Laws, 1989, No. 1 of the County of Putnam, as amended by Local Laws, 1989, No. 9 of the County of Putnam, is invalid.