ILC DATA DEVICE CORP. et al., Respondents, v COUNTY OF SUFFOLK, Appellant.

Second Department, September 14, 1992

## APPEARANCES OF COUNSEL

*E. Thomas Boyle, County Attorney,* Hauppauge *(Harriet A. Gilliam* of counsel), for appellant.

*Meltzer, Lippe, Goldstein & Wolf, P. C.,* Mineola *(Gary N. Sazer* and *Brian S. Conneely* of counsel), for respondents.

*David A. Mintz, Gabrielle Semel* and *Alan M. Compagnon,* New York *(Amy Young* on the brief), for Communications Workers of America, AFL-CIO, *amicus curiae.*

## OPINION OF THE COURT

SULLIVAN, J. P.

■ The chief issue presented on this appeal is whether Local Laws, 1988, No. 21 of the County of Suffolk, which governs certain aspects of video display terminal (hereinafter VDT) equipment usage among employers doing business within the County, is inconsistent with or preempted by any New York State or Federal law. We conclude that it is preempted by the New York State Labor Law and therefore is invalid.

### I. BACKGROUND

After conducting a series of public hearings and reviewing extensive testimonial and documentary submissions, the Suffolk County Legislature enacted Local Laws, 1988, No. 21 of the County of Suffolk (hereinafter Local Law No. 21), entitled "A local law providing employee protection against video display terminals". Section 1 of the law sets forth the legislative intent underlying its enactment as follows:

"This Legislature hereby finds ands *[sic]* determines that it is in the public interest to provide public[1] and private sector employees who operate video display terminals within Suffolk County with a safe and healthy work environment. This legislature further determines that, although some employers and manufacturers have recognized and implemented minimum safeguards in equipment and workstation design and work routine in order to better protect the health and wellbeing of employees who operate video display terminals on a regular basis, the vast majority of terminal operators remain, as yet, unprotected.

"Therefore, it is the intent of this Legislature to protect the

---

1. The Suffolk County Legislature previously had passed Local Laws, 1987, No. 35 of the County of Suffolk which is designed to protect the health and safety of VDT operators who are employed by the County of Suffolk.

health and safety of video display terminal operators within the County of Suffolk by requiring employers who have twenty or more video display terminals within the County of Suffolk to implement widely recognized employed *[sic]* safeguards so as to prevent harm and injury to such workers".

To this end, Local Law No. 21 requires that those employers operating 20 or more VDTs in the County meet certain workplace standards, *inter alia,* for light, noise levels, and seating comfort for their employees who are VDT operators. Additionally, the law affords VDT operators the opportunity to have an annual eye examination and to receive corrective lenses necessitated by VDT usage, with 80% of the cost therefor to be borne by the employer *(see,* Local Law No. 21 § 3 [A]). Moreover, the legislation expressly authorizes the Commissioner of the Suffolk County Department of Health Services to promulgate regulations governing the inspection of employer premises and the enforcement of the Local Law *(see,* Local Law No. 21 §§ 6, 8).

By service of a summons and complaint dated July 20, 1988, the plaintiffs,[2] corporations which claimed that they would be adversely affected by the provisions of Local Law No. 21, commenced the instant action against the defendant County of Suffolk for a judgment (1) declaring that Local Law No. 21 is unconstitutional and void, and (2) permanently enjoining its implementation and enforcement. In three causes of action, the plaintiffs alleged a multitude of bases for invalidating the law, including the Legislature's lack of authority under the Municipal Home Rule Law to enact it; the preemption of the Local Law, *inter alia,* by New York's Labor Law and Workers' Compensation Law as well as by Federal legislation such as the Employee Retirement Income Security Act and the Occupational Safety and Health Act; the law's authorization of warrantless searches in violation of Federal and New York State constitutional provisions; the denial of equal protection resulting from the application of the law only to employers with 20 or more VDTs, and the lack of credible scientific evidence to support the law's premise that operators of VDTs are at risk of injury. Thereafter, the County unsuccessfully moved to dismiss the complaint, while the plaintiffs succeeded in obtaining a preliminary injunction with respect to the implementation of a portion of Local Law No. 21.

---

2. It appears that pursuant to a stipulation of the parties, the action has been discontinued with respect to the plaintiff Micra Corp. on the ground that it no longer does business in Suffolk County.

The County subsequently moved for summary judgment dismissing the complaint, and the plaintiffs cross-moved for partial summary judgment on their first and second causes of action. In a decision dated December 27, 1989, the Supreme Court denied the County's motion in its entirety and granted the plaintiffs' cross motion to the extent of striking down Local Law No. 21 on the ground that the Legislature had no authority to enact it under Municipal Home Rule Law § 11 (1) (f) *(see, ILC Data Device Corp. v County of Suffolk,* 146 Misc 2d 462). The County presently appeals from the ensuing order.

We agree with the conclusion reached by the Supreme Court, although we reach that conclusion upon a somewhat different analysis.

## II. LEGISLATIVE AUTHORITY

The plaintiffs' primary contention throughout this action has been that the Suffolk County Legislature lacked authority under the Municipal Home Rule Law to enact Local Law No. 21, with the result that it is invalid. They maintain that Local Law No. 21 is inconsistent with and preempted by a host of Federal and State enactments, chief among these the New York State Labor Law. Conversely, the County and *amicus curiae* urge that there is no inconsistency or preemption and that Local Law No. 21 constitutes a valid exercise of the County's general police power to protect the health and to ensure the safety of its people.

In discussing the extent of the County's home rule powers, it is useful to note that "since the fount of the police power is the sovereign State, such power can be exercised by a local governmental unit only when and to the degree it has been delegated such lawmaking authority" *(People v De Jesus,* 54 NY2d 465, 468; *see, Matter of Ames v Smoot,* 98 AD2d 216). Local governments have indeed received broad grants of legislative power in order to enact laws affecting their parochial concerns *(see,* NY Const, art IX, § 2 [c] [i]; Municipal Home Rule Law § 10 [1] [i]). However, their authority to legislate goes far beyond purely local matters, as is evidenced by the language of New York Constitution, article IX, § 2 (c) (ii) (10):

"In addition to powers granted in the statute of local governments or in any other law * * * (ii) *every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any*

*general law*[3] *relating to the following subjects, whether or not they relate to the property, affairs or government of such local government,* except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
* * *

"(10) *The government, protection, order, conduct, safety, health and well-being of persons or property therein"* (emphasis supplied).

The foregoing constitutional provision is repeated virtually verbatim in Municipal Home Rule Law § 10 (1) (ii) (a) (12), and the legislative powers conferred on local governments by the Constitution and the Municipal Home Rule Law are to be broadly construed *(see,* NY Const, art IX, § 3 [c]; Municipal Home Rule Law § 51; *Kamhi v Town of Yorktown,* 74 NY2d 423).

■ The plaintiffs contend, and the Supreme Court found, that regardless of whether Local Law No. 21 could be validly enacted pursuant to Municipal Home Rule Law § 10, its adoption is precluded by Municipal Home Rule Law § 11 (1) (f), which provides in relevant part as follows:

"Notwithstanding any provision of this chapter, the legislative body shall not be deemed authorized by this chapter to adopt a local law which supersedes a state statute, if such local law * * *

"f. Applies to or affects any provision of * * * the labor law * * * or the workmen's compensation law".[4]

The plaintiffs claim that since Local Law No. 21 sets certain standards for VDT workstations and permits VDT operators to avail themselves of employer-funded vision care, it "applies to or affects" both the Labor Law and the Workers' Compensation Law. Hence, they reason that the local law impermissibly "supersedes" these State laws and must therefore be invalidated. The argument is unpersuasive.

It is a basic principle of statutory interpretation that "[s]tatutory language is generally to be construed in accordance with its plain and obvious sense, and the meaning attached to

3. A general law is defined as "[a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (NY Const, art IX, § 3 [d] [1]).

4. Now the Workers' Compensation Law.

it should be neither strained nor artificial *(see, Civil Serv. Employees Assn. v County of Oneida,* 78 AD2d 1004; McKinney's Cons Laws of NY, Book 1, Statutes § 94)" *(Shoreham-Wading Riv. Cent. School Dist. v Town of Brookhaven,* 107 AD2d 219, 223). The construction of Municipal Home Rule Law § 11 (1) (f) advocated by the plaintiffs violates this principle and turns the statute on its head by asserting that if a local law applies to or affects the Labor Law or Workers' Compensation Law, then it improperly supersedes such law. However, the plain language of the statute requires that, in order to be invalid, *a local law must first supersede a State statute,* and then it must additionally apply to or affect a provision of one of the enumerated bodies of State law. In the present case, Local Law No. 21 contains no statement indicating an intent to supersede any other law. Additionally, Local Law No. 21 does not substantially comply with the procedural requirements for superseding a State statute as set forth in Municipal Home Rule Law § 22, and in the absence of such substantial compliance, supersession will not be found *(see, Kamhi v Town of Yorktown, supra).* Hence, since there is no supersession herein, the next level of inquiry under Municipal Home Rule Law § 11 (1) (f)—i.e., the question of whether Local Law No. 21 applies to or affects any provision of the Labor Law or the Workers' Compensation Law—is irrelevant and need not be reached. In the absence of an attempt by the County of Suffolk to supersede or override any specific State statute in this case, Municipal Home Rule Law § 11 (1) (f) is inapposite to the present controversy. However, our inquiry does not end there, for we must still determine whether Local Law No. 21 is inconsistent with or preempted by any New York State or Federal law so as to render it invalid under New York Constitution, article IX, § 2 (c) (ii) and Municipal Home Rule Law § 10 (1) (ii).

### III. INCONSISTENCY AND PREEMPTION

In *Jancyn Mfg. Corp. v County of Suffolk* (71 NY2d 91, 96-97), the Court of Appeals identified the parameters of the legislative authority conferred upon local governments and explained the related concepts of inconsistency and preemption as follows: "although the constitutional home rule provision confers broad police powers upon local governments relating to the welfare of [their] citizens, local governments may not exercise their police power by adopting a law inconsistent with the Constitution or any general law of the State

(NY Const, art IX, § 2 [c]; *New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *probable jurisdiction noted* 484 US 812; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105; *Monroe-Livingston Sanitary Landfill v Town of Caledonia,* 51 NY2d 679, 683; *People v Cook,* 34 NY2d 100, 105-106). A local law may be ruled invalid as inconsistent with State law not only where an express conflict exists between the State and local laws, but also where the State has clearly evinced a desire to preempt an entire field thereby precluding any further local regulation *(New York State Club Assn. v City of New York, supra,* at 217; *People v New York Trap Rock Corp.,* 57 NY2d 371, 378; *People v De Jesus,* 54 NY2d 465, 468-470; *People v Cook, supra,* at 109; *Matter of Ames v Smoot,* 98 AD2d 216, 217-219, *appeal dismissed* 62 NY2d 804). Where it is determined that the State has preempted an entire field, a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe *(New York State Club Assn. v City of New York, supra,* at 221; *Monroe-Livingston Sanitary Landfill v Town of Caledonia, supra,* at 683; *see also, Wholesale Laundry Bd. v City of New York,* 12 NY2d 998, *affg on opn* at 17 AD2d 327, 327-330, *supra)* or (2) imposes additional restrictions on rights granted by State law *(see, e.g., Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347, 350-352; *F. T. B. Realty Corp. v Goodman,* 300 NY 140, 147-148, *supra).* Such laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns *(New York State Club Assn. v City of New York, supra,* at 217, 221; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 108, *supra; see also, Floyd v New York State Urban Dev. Corp.,* 33 NY2d 1, 7)*".

■ Applying the foregoing principles to the matter before us, we find that Local Law No. 21 is "inconsistent" with a general law of the State because it constitutes an attempt to regulate in a field preempted by the Labor Law. Any express conflict between Local Law No. 21 and a specific provision of the Labor Law is largely obviated by the fact that there are no State-wide statutory or regulatory provisions governing the use of VDTs in the workplace. Nevertheless, it is well settled that inconsistency may be found, even in the absence of an

express conflict, where the State Legislature has evinced a desire to preempt a given field and thereby to prohibit local regulation of the entire area *(see, Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500; *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Ba Mar v County of Rockland,* 164 AD2d 605; *Oil Heat Inst. v Town of Babylon,* 156 AD2d 352; *Dougal v County of Suffolk,* 102 AD2d 531, *affd* 65 NY2d 668). The intent to occupy an entire field of regulation need not be express. Rather, "that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area" *(New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *affd* 487 US 1). In the present case, the enacting of the comprehensive regulatory scheme embodied in the Labor Law and the vesting of broad rule-making and enforcement authority in the Commissioner of Labor of the State of New York (hereinafter the Commissioner) lead us to conclude that the State Legislature intended to preclude local regulation in the field of employee safety in the workplace.

The general powers and duties of the Commissioner, including the expansive authority to engage in inspections, investigations, and enforcement with regard to, *inter alia,* workplace safety and health, are set forth in Labor Law § 21. A desire on the part of the Legislature to foster a direct and cooperative relationship between the Commissioner, as a State officer, and individual employers and employees is discernible from the language of Labor Law § 21 (5) and (6), which provide that the Commissioner:

"5. Shall institute methods and procedures for the establishment of a program for voluntary compliance by employers and employees with the requirements of this act and all applicable safety and health standards and rules and regulations promulgated pursuant to the authority of this article;

"6. Shall provide a method of encouraging employers and employees in their efforts to reduce the number of safety and health hazards arising from undesirable, inappropriate, or unnecessary working conditions at the workplace and of stimulating employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions".

Indeed, this conclusion is borne out by a Governor's memorandum regarding the enactment of Labor Law § 21 (5) and (6),

which states in relevant part that the legislation requires the Commissioner "to establish a consultative service which would enable employers and employees to request advice from the Department [of Labor] * * * on the methods for removing hazardous conditions at work sites * * * [and] would also assist employers in becoming familiar with the Federal OSH standards which they will now be required to follow" (1975 NY Legis Ann, at 335).

Consistent with the foregoing duties, the Commissioner has the authority to establish and maintain local "branch offices" of the Department of Labor in such locations as he may determine (Labor Law § 14), thereby facilitating the application of State-wide regulation by State officials at the local level (see, People v De Jesus, 54 NY2d 465, 469, supra [State's imposition of its direct controls at local level through the establishment of local alcoholic beverage control boards supports conclusion that the State Alcoholic Beverage Control Law preempts local regulation of establishments which sell alcoholic beverages]; cf., Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 99, supra).

Furthermore, to the extent that it is not preempted by the United States Occupational Safety and Health Act of 1970 (29 USC § 651 et seq.; see, 29 USC § 667), Labor Law § 27 regulates the adoption, implementation, and enforcement of safety and health standards for private employees in New York. That statute expressly authorizes the Commissioner to adopt "safety and health standards which provide reasonable and adequate protection to the lives, safety or health of employees" (Labor Law § 27 [2] [a]), to require licenses and to establish a licensing fee schedule for any occupation "which the [C]ommissioner finds contains special elements of danger to the lives, safety or health" of such employees (Labor Law § 27 [2] [b]), and to "promulgate such regulations as he shall consider necessary and proper to effectuate the purposes and provisions of this section" (Labor Law § 27 [3]). In a memorandum regarding, inter alia, the enactment of this statute, it was noted that the purpose of the legislation was "to authorize the Department of Labor to administer and enforce occupational and public safety standards * * * in those areas which will not be preempted * * * under the Federal Occupational Safety and Health Act" (1975 NY Legis Ann, at 335).

Additionally, the State Legislature has provided the Commissioner with the authority to make, amend, and terminate "variations" from health and safety standards upon a showing

of practical difficulties or unnecessary hardship (see, Labor Law § 30), to inspect physical premises and books and records (see, Labor Law §§ 25, 26), and to issue subpoenas and conduct hearings (see, Labor Law § 39). The Labor Law and the regulations promulgated thereunder similarly set forth comprehensive procedures for administrative and judicial review (see, Labor Law art 3; 12 NYCRR parts 65-73), govern the employment of minors in the workplace (see, Labor Law art 4; 12 NYCRR parts 185, 187), control work hours and wages (see, Labor Law arts 5, 6; 12 NYCRR parts 175-176, 137-143, 190, 195), and authorize the Commissioner to identify and ameliorate dangers in machinery and equipment (see, Labor Law § 200).

The foregoing statutes, regulations, and legislative memorandum strongly suggest that the State Legislature intended the field of workplace safety to be exclusively occupied by the Labor Law to the extent that it is not already regulated by the Federal Occupational Safety and Health Act of 1970 (see also, Labor Law § 27-a [governing safety and health standards for public employees]). In effect, the regulatory scheme set up by the Labor Law with regard to the subject of employee health and safety is so comprehensive and detailed as to render Local Law No. 21 "inconsistent" with State law under New York Constitution, article IX, § 2 (c) (ii) and Municipal Home Rule Law § 10 (1) (ii) (see, e.g., Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, supra; People v De Jesus, 54 NY2d 465, supra; Ba Mar v County of Rockland, 164 AD2d 605, supra; Dougal v County of Suffolk, supra).

■ The County and the amicus curiae contend that, despite the comprehensive nature of the Labor Law, the State Legislature expressly contemplated local regulation of workplace safety by enacting Labor Law § 21 (9), which provides that the Commissioner "[m]ay enforce any lawful municipal ordinance, by-law or regulation relating to any place affected by the provisions of this chapter, not in conflict with provisions of this chapter" (emphasis supplied). However, in view of its reference to "any place", we construe this provision to mean only that the Commissioner may enforce properly enacted local building, sanitation, and fire codes, etc., affecting the premises. This interpretation is consistent, inter alia, with Labor Law § 200 (4) (authorizing enforcement of the State Building Construction Code in those municipalities which have accepted it) and Labor Law § 471 (authorizing the creation of minimum State-wide safety standards for places of

public assembly, but permitting "the enactment by local ordinance of additional requirements and restrictions"). Hence, we view Labor Law § 21 (9) as merely referring to "local laws of general application such as * * * one requiring smoke alarms in all business premises, or one forbidding dumping of refuse on [municipal] sidewalks" *(People v De Jesus, supra,* at 471; *see, Ba Mar v County of Rockland, supra* [reference in preemptive State law to existing local laws construed as referring to local regulations governing general safety, fire and health standards]; *People v Town of Clarkstown,* 160 AD2d 17, 24 [reference in State regulations to local codes "merely establishes an adequate means of insuring that ancillary concerns such as safety, fire, and health standards are met, unobtrusive to State goals", and does not negate a finding of State preemption in the particular field under review]). Accordingly, we find that Labor Law § 21 (9) poses no impediment to our finding of preemption in this case.

■ The County further claims that it has the authority to regulate the operation of VDTs within its borders because the Labor Law is silent on this specific subject. It also contends that a finding of inconsistency cannot be premised on the mere fact that the State law and local law attempt to regulate the same general subject matter (i.e., employee safety in the workplace). These contentions are not without some support. Indeed, "silence on [an] issue should not be interpreted as an expression of intent by the Legislature. To interpret a statute in that manner would vitiate the concept of home rule; anytime a State is silent the likelihood exists that a local law will regulate the activity and will prohibit something permitted elsewhere in the State" *(Council For Owner Occupied Hous. v Koch,* 119 Misc 2d 241, 245, *affd* 61 NY2d 942). Similarly, "that an ordinance has some connection with a subject upon which a State statute exists does not automatically vitiate it on that account" *(People v New York Trap Rock Corp.,* 57 NY2d 371, 378; *see, Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500, *supra; People v Judiz,* 38 NY2d 529). However, where the State law preempts a particular field, such as the field of employee safety in this case, "a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it * * * prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe" *(Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 97, *supra; see, Robin v Incorporated Vil. of Hempstead,* 30

NY2d 347; *Wholesale Laundry Bd. v City of New York,* 12 NY2d 998, *affg on opn at* 17 AD2d 327). Inasmuch as the Labor Law preempts the field of workplace safety, it permits, by reason of its silence on the subject, the operation of VDTs without any special regulations or safeguards. Hence, Local Law No. 21 impermissibly prohibits what the State law permits by providing that the use of VDTs must be accompanied by a panoply of safeguards which neither the State Legislature nor the Commissioner of Labor has seen fit to enact.

Moreover, while the question of supersession under Municipal Home Rule Law § 11 (1) (f) is not implicated in this case because, *inter alia,* there is no State statute governing VDT usage, Local Law No. 21 nevertheless does contain several provisions which touch upon matters which are already governed by the Labor Law. For example, Local Law No. 21 § 3 (A), providing for employer-funded vision examinations for VDT operators, relates to Labor Law § 27 (2) (b) and § 201-b, which respectively provide for medical inspection and govern fees for medical examinations. Similarly, both Local Law No. 21 § 3 (B) (11), and 12 NYCRR part 49 regulate noise in the workplace, while Local Law No. 21 § 3 (B) (9), (10) and Labor Law § 200 (1) and § 257 address factory workplace lighting. Thus, Local Law No. 21 improperly attempts to add another layer of regulation in an area where comprehensive and detailed regulations already exist at the State level *(see, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99), and its enforcement "would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns" *(Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 97, *supra; see, e.g., Board of Educ. v Gulotta,* 157 AD2d 642). Indeed, the insertion of local regulation into this field would certainly appear to inhibit the desirable goal, among others, of fostering a direct and cooperative relationship between New York State Department of Labor officials and employers *(see,* Labor Law § 21 [5], [6]). Under these circumstances, the very nature of the field of employee safety in the workplace, and the comprehensive State regulatory scheme governing it, dictate that controls over workplace safety and health continue to be approached on a uniform, State-wide basis. Although Local Law No. 21 is undoubtedly well-intentioned and demonstrates laudable concern for employee safety, it cannot stand in view of our finding of State preemption. Accordingly, we affirm the Su-

preme Court's order and remit the matter for the entry of an appropriate declaratory judgment.

Finally, in view of the foregoing, we have no occasion to consider the parties' remaining contentions.

LAWRENCE, EIBER and PIZZUTO, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an appropriate judgment.