OPINION OF THE COURT
Kaye, J.
 At issue on this appeal is the validity of a local law of the Town of Yorktown conditioning site plan approval for a multifamily residential development on the provision of parkland or its money equivalent. We conclude that while in substance the Town may exercise its supersession authority to adopt such a law, in form the enactment before us was properly declared invalid.
The subject property is a 43-acre parcel in Yorktown’s zone R-3, which permits multifamily residential use of up to 12 units per acre. Plaintiff, the property owner, planned a condominium development, "Villas on the Lake,” and to this end sought site plan approval from the Town Board.
Following submission of revised plans, environmental impact statements, reports of various Town agencies and public hearings, the Town Board approved plaintiff’s plan on condition that he pay a "recreation fee” of $47,550. That condition was imposed pursuant to Local Laws, 1982, No. 6 of Town of Yorktown, which pertains to site plan approval for R-3 developments. In relevant part Local Law No. 6 reads:
*427 "The developer shall provide a suitably improved playground/play area. Each such playground/play area shall have a minimum area of 1,200 square feet and a maximum distance of 1,000 feet from the units to be served.
"In addition to the above, the developer shall also set aside ten percent (10%) of the site for the provision of park and/or recreational facilities. If the provision of such facilities is impractical because of the particular layout of the development or for other reasons, a recreation fee of $350.00 per unit shall be submitted prior to approval of the application.”
Plaintiff paid the fee under protest and commenced this action for money had and received. He then sought summary judgment, contending that the Town was not authorized under Town Law § 274-a to impose a recreation fee as a condition of site plan approval, citing Riegert Apts. Corp. v Planning Bd. (57 NY2d 206). In response, the Town cross-moved for summary judgment dismissing the complaint. The Town’s position was that, notwithstanding section 274-a, the recreation fee was validly imposed pursuant to Local Law No. 6 which it was empowered to enact under section 10 of the Municipal Home Rule Law.
Supreme Court granted the Town’s motion and dismissed the complaint, holding that an action for money had and received was an inappropriate vehicle for review of the Town’s determination, and that the challenge to the Board’s action should have been by way of an article 78 proceeding, which was time-barred. The Appellate Division reversed. Converting the action into one for a declaratory judgment, the Appellate Division concluded that Local Law No. 6 was invalid under Riegert. We granted the Town’s motion for leave to appeal and now affirm the Appellate Division order, but on a different ground.
In general, towns have only the lawmaking powers the Legislature confers on them. In particular, they have no inherent power to impose conditions on site plan approval. Without legislative grant, an attempt to exercise such authority is ultra vires and void (see, Matter of Kamhi v Planning Bd., 59 NY2d 385; Matter of Golden v Planning Bd., 30 NY2d 359, 369-370, appeal dismissed 409 US 1003). Thus, our task is to determine whether the Legislature empowered the Town to enact a local law conditioning site plan approval on the delivery of parkland or its money equivalent.
*428 That authority is not found in the provisions of Town Law article 16, the enabling legislation in the Town Law for local lawmaking in the area of zoning and planning. As we held in Riegert Apts. Corp. v Planning Bd. (57 NY2d 206, supra), Town Law § 274-a ("Planning board approval of site plans and certain uses”) sets forth the elements a town planning board may require for site plan approval, and significantly does not authorize a demand of parkland or its money equivalent. The Town urges, nevertheless, that its grant of authority lies in Municipal Home Rule Law § 10. This contention, which was not before us in Riegert, puts in issue the scope of authority municipalities have under their home rule powers.
Municipal Home Rule Law Authority
Municipal home rule in this State has been a matter of constitutional principle for nearly a century. Article IX of the State Constitution declares that effective local self-government and intergovernmental cooperation are purposes of the people of this State, and it directs the Legislature to provide for the creation and organization of local governments so as to secure the rights, powers, privileges and immunities granted by the Constitution (see, NY Const, art IX, § 1). As several commentators have noted,[1] the path of home rule over the century has been unsettled and tortuous, which reflects the "difficult problem of furthering strong local governments but leaving the State just as strong to meet the problems that transcend local boundaries, interests and motivations.” (Wambat Realty Corp. v State of New York, 41 NY2d 490, 498; Matter of Town of Islip v Cuomo, 64 NY2d 50, 54-56.)
In 1964, a home rule package was adopted, comprising article IX of the State Constitution (with a "Bill of rights for local governments”) and various implementing statutes, including the Municipal Home Rule Law and the Statute of Local Governments, both of which must be "liberally construed.” (Municipal Home Rule Law § 51; Statute of Local Governments §20 [5].) In structure, these reforms continued the earlier two-part model for home rule: limitations on State *429 intrusion into matters of local concern and affirmative grants of power to local governments (Rozler v Franger, 46 NY2d 760, affg on opn at 61 AD2d 46, 55 [Hancock, Jr., J.]). This case involves the Legislature’s affirmative grant of power to towns, and not any limitation on State lawmaking powers.
The Municipal Home Rule Law affirmatively grants authority to towns — "[i]n addition to powers granted in the constitution, the statute of local governments or in any other law” — to adopt local laws relating to their "property, affairs or government,” provided that such legislation is not inconsistent with the Constitution or any general law (NY Const, art IX, § 2 [c] [i]; Municipal Home Rule Law § 10 [1] [i]). The statute further authorizes towns to adopt local laws in 14 enumerated instances, so long as those enactments are not inconsistent with general law or prohibited by State law (NY Const, art IX, § 2 [c] [ii] [1]; Municipal Home Rule Law § 10 [1] [ii]; Matter of Marcus v Baron, 57 NY2d 862, revg on dissent of Hopkins, J., 84 AD2d 118, 134-139).
Neither of these grants of power encompass Local Law No. 6, however, because — as the Appellate Division correctly held —the local law is inconsistent with Town Law § 274-a, which defines planning board powers in connection with site plan approval. As we concluded in Riegert, there is no express authority in the Town Law for planning boards to impose parkland-or-money conditions for site plan approval, as there is for subdivision plat approval under Town Law § 277. Moreover, because of the Legislature’s evident choice in omitting that authority for site plan approval while including it for subdivision plat approval, the power cannot be implied in Town Law § 274-a (Riegert Apts. Corp. v Planning Bd., supra).
Thus, in view of the inconsistency between Local Law No. 6 and Town Law § 274-a, authority cannot be found for the local law in Municipal Home Rule Law § 10 (1) (i) or (ii).
Supersession Authority
Although local laws that are inconsistent with State laws are generally invalid, a limited exception exists for local laws that fall within Municipal Home Rule Law § 10 (1) (ii) (d) (3)— the supersession authority. The section provides that a town may amend or supersede, in its local application, "any provision of the town law relating to the property, affairs or government of the town or to other matters in relation to which and to the extent to which it is authorized to adopt *430 local laws by this section, notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited the adoption of such a local law.”[2] The statute goes on to specify matters as to which supersession is not authorized by the section — for example, with respect to a special or improvement district or an improvement area — but those restrictions are not in issue in this case.
When municipalities act within their supersession authority, even local laws that are inconsistent with the Town Law may be valid. Indeed, inconsistency is a premise of the super-session authority, for there is otherwise little need of the power to amend or supersede State law (Rozler v Franger, 61 AD2d 46, 52-53, supra). Local lawmaking power under the supersession authority is of course in all instances subject to the State’s transcendent interest where the Legislature has manifested such interest by expressly prohibiting a local law (Municipal Home Rule Law § 10 [1] [ii] [d] [3]), or where a local law is otherwise preempted by State law (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372 [decided today]).
By thus carving out a narrow, well-demarcated area of purely local concern where towns can within their Municipal Home Rule Law § 10 authority amend and even override provisions of the Town Law in their local applicability, the Legislature has recognized that situations may arise where laws of State-wide application are appropriately tailored by municipalities to fit their own peculiarly local needs (see, Rice, 1988 Survey of New York Law: Zoning and Land Use, 40 Syr L Rev 641, 642 [1989]; Cole, Municipal Home Rule Law and Local Zoning Power, 3 Mun Law 2 [Nov./Dec. 1986]). Such a situation is before us today.
Application of Supersession in this Case
In the abstract, no one questions the legitimacy of a municipal reservation of parkland or its money equivalent as a condition of residential land development (see, e.g., Jenad, Inc. v Village of Scarsdale, 18 NY2d 78, 84; 2 Anderson, New York Zoning Law and Practice §§ 21.18-21.19, at 94-99 [3d ed 1984]). It is long settled that such a condition may be imposed so long as there is a sufficient nexus between the property and prob *431 lem being redressed (see, Matter of Golden v Planning Bd., 30 NY2d 359, 371, n 5, supra; Note, Municipal Development Exactions, The Rational Nexus Test, and the Federal Constitution, 102 Harv L Rev 992 [1989]; Delaney, Gordon and Hess, The Needs-Nexus Analysis: A Unified Test for Validating Subdivision Exactions, User Impact Fees and Linkage, 50 L & Contemp Prob 139 [Winter 1987]). Indeed, no challenge has been made to the reasonableness of Local Law No. 6; although the local law does not so specify, plaintiff apparently assumes for present purposes that the "recreation fee” would benefit his development.
Nor can there be question about the uniquely local impact of the condition in issue. We have long recognized that a town’s planning needs with respect to its neighborhood parks and playgrounds are "distinctively” matters of local concern (see, Adler v Deegan, 251 NY 467, 484-485 [Cardozo, Ch. J., concurring]; see also, Aunt Hack Ridge Estates v Planning Commn., 160 Conn 109, 273 A2d 880; 4 Anderson, American Law of Zoning § 25.39, at 392 [3d ed 1986]). The Legislature, similarly, has long recognized the uniquely local nature of parkland-or-fee requirements by expressly authorizing town planning boards to condition approval of subdivision plats on "a payment to the town of a sum to be determined by the town board, which sum shall constitute a trust fund to be used by the town exclusively for neighborhood park, playground or recreation purposes including the acquisition of property.” (Town Law § 277.) The Legislature made clear that it does not consider that there is a need for uniformity, or other paramount State interest, in the imposition of such a condition.
Our conclusion in Riegert that the express statutory authority found in Town Law § 277 could not, by implication, be extended to site plan approvals rested on a general over-all distinction between site plans and subdivision plats: a site plan usually involves the proposed development of a single lot intended to remain as such, while a subdivision plat involves the division of a parcel into smaller, ultimately individually owned lots (Riegert Apts. Corp. v Planning Bd., 57 NY2d, at 210-212, supra). Permitting towns to impose a parkland-or-money condition on site plan approval, we explained in Riegert, would enable them "to exact a toll twice from the same development: once when the developer seeks approval of the plat; the second time when individual lot owners seek approval of the building plans for their homes. There would, of course, be no real justification for a planning board to demand *432 from the individual lot owners land or money for parks when the developer’s contribution has already been received. By expressly providing for public park dedication in section 277 plat approval and by omitting any reference to parks in section 274-a, the Legislature intended that the burden of major community concerns such as parks be placed on the developer, not the individual lot owner.” (Id., at 212.)
But when Town Law § 274-a is specifically applied to plaintiffs R-3 condominium development in the Town of Yorktown, this legislative design is defeated. As the Town points out,, its condominium housing developments generally do not require subdivision approval. Site plan approval is the significant — if not only — approval for such multifamily developments. In such instances, the concern about imposing a double toll on a property owner therefore becomes inapposite. Equally relevant, when Town Law § 274-a is specifically applied to these developments in Yorktown, the legislative objective we identified in Riegert of placing "the burden of major community concerns such as parks * * * on the developer” can be wholly circumvented. A developer of high-density, multifamily projects — while adding significantly to the demand for neighborhood recreation space — can avoid any contribution to supplying such space by structuring a project in the form of cooperatives or condominiums within Yorktown’s R-3 district, rather than in a form requiring subdivision approval (see generally, 5 Ziegler, Rathkopf s Zoning and Planning § 64.03 [2] [b], at 64-29 — 64-30). The supersession authority permits the Town to correct this anomaly.
A town can amend or supersede a provision of the Town Law only "in relation to which and to the extent to which” it is authorized to adopt local laws by section 10 of the Municipal Home Rule Law (Municipal Home Rule Law § 10 [1] [ii] [d] [3]). In the circumstances presented, we hold that permitting the Town to supersede Town Law § 274-a in its local application — so that the purpose of the statute will be promoted rather than defeated within this community — fits comfortably within section 10 (see, Matter of Torsoe Bros. Constr. Corp. v Architecture & Community Appearance Bd. of Review, 120 AD2d 738; 1982 Opns Atty Gen [Inf Opns] No. 84, at 227 [distinguishing Riegert]; 5 Rohan, Zoning and Land Use Controls § 33C.02 [2] [1989]; Rice, 1988 Survey of New York Law: Zoning and Land Use, 40 Syr L Rev 641, 641-644 [1989]; Cole, Home Rule Law and Local Zoning Power, 3 Mun Law 2 [Nov./ Dec. 1986]).
*433 Municipal Home Rule Law § 10 (1) (ii) (a) (12) vests towns with the police power to enact laws relating to the "government, protection, order, conduct, safety, health and well-being of persons or property therein.” Although this provision is not a delegation of the entire police power of the State and is limited to matters of an inherently local nature, it affords a basis for local "land use controls to meet the increasing encroachments of urbanization on the quality of life.” (Town of Islip v Caviglia, 73 NY2d 544, 550; see also, Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 96; People v Cook, 34 NY2d 100, 105-110; Good Humor Corp. v City of New York, 290 NY 312, 316-318.) Municipal Home Rule Law § 10 (1) (ii) (a) (14), moreover, permits a town to adopt local laws to exercise "[t]he powers granted to it in the statute of local governments.” The Statute of Local Governments § 10 (6) in turn gives towns the power to "adopt, amend and repeal zoning regulations.” This provision also affords a limited field for local lawmaking in the area of planning and zoning.[3]
To deny the Town’s authority in this case — as the concurrence urges — would be to give little force to the independent grants of power specified in the Municipal Home Rule Law and the Statute of Local Governments; it would ignore the Legislature’s direction that these statutes be liberally construed; and it would significantly diminish the long-heralded constitutional and statutory home rule reforms. As Chief Judge Cardozo observed, the home rule laws "adopted by the people with much ado and after many years of agitation, will be another Statute of Uses, a form of words and little else, if the courts * * * ignore the new spirit that dictated their adoption.” (Matter of Mayor of City of N. Y. [Elm St.] 246 NY 72, 76.)
*434 We therefore must reject the concurrers’ view that — while the intended purpose of the supersession authority is to permit localities to fashion delegated powers to suit local needs, and while some authority for lawmaking in the area of zoning and planning can be found in Municipal Home Rule Law § 10 —that authority can go no further than structuring the organization and administration of town government (concurring opn, at 438). No such limitation is apparent from the plain language of section 10 (1) (ii) (d) (3), which refers not only to "the property, affairs or government of the town” but also to "other matters in relation to which and to the extent to which [a town] is authorized to adopt local laws by this section.” (See also, n 2, supra.) Moreover, we find nothing in the Bill Jacket that compels such a cramped construction of the section; indeed, the Bill Jacket reflects a recognition, voiced as a criticism, that the legislation could "enable drastic changes and lead to unusual innovations in local government which cannot be foreseen.” (Mem of Division of Housing and Community Renewal, Governor’s Bill Jacket, L 1976, ch 365.)
We conclude that the Town had the power to adopt a local law requiring parkland-or-money exactions in connection with site plan approval for R-3 developments. This is hardly license for an "arrogation of undelegated power” or a "profound change * * * giv[ing] municipalities virtually unconstrained authority to act” (concurring opn, at 436, 442). Rather, our conclusion represents a faithful application of the dictates of the Municipal Home Rule Law, which — within narrow confines— permits the Town of Yorktown to adjust a provision of the Town Law so that in its local application it will have exactly the effect intended by the Legislature.
Noncompliance with Formal Requisites
While a town might enact a local law requiring parkland or its money equivalent for site plan approval, the Appellate Division declaration of invalidity nonetheless must be sustained because the local law in issue does not comply with the formal requirements of the Municipal Home Rule Law.
A town’s authority to amend or supersede can be exercised only upon substantial adherence to the procedures set forth in Municipal Home Rule Law § 22 (1) (Turnpike Woods v Town of Stony Point, 70 NY2d 735). That provision requires a municipality invoking its supersession authority to state its intention with definiteness and explicitness — hardly an insignificant *435 matter, in that there is otherwise no way of knowing what the locality intends, or what law governs. A clear statement avoids "the confusion that would result if one could not discern whether the local legislature intended to supersede an entire State statute, or only part of one — and, if only a part, which part.” (Turnpike Woods v Town of Stony Point, supra, at 738; Bareham v City of Rochester, 246 NY 140, 150 [interpreting predecessor provision City Home Rule Law § 12]; see also, County of Rensselaer v City of Troy, 102 AD2d 976, 977; Stone v Village of Baldwinsville, 138 Misc 2d 164.)
Local Law No. 6 does not expressly amend or supersede Town Law § 274-a, nor does it contain any declaration of intent to do so. "Nowhere does it define by reference to chapter and section number, or by reference to title, or by replication of actual text, the particular provision(s) of the Town Law to which it purports to apply.” (Turnpike Woods v Town of Stony Point, supra, at 738.) While section 22 provides that failure to comply punctiliously with every specification requirement will not invalidate a local law, here the local law reveals nothing of the Town’s intention to amend or supersede and consequently must be declared invalid.
We thus need not consider whether this local law is additionally invalid for its failure to specify that use of the fees would be limited to parkland benefiting the development (cf., Jenad, Inc. v Village of Scarsdale, 18 NY2d 78, 84, supra; Connors & High, The Expanding Circle of Exactions: From Dedication to Linkage, 50 L & Contemp Prob 69, 71 [Winter 1987] ["A properly drafted ordinance must specify that the use of the fees is limited to the eventual acquisition of a park * * * that will primarily, although not exclusively, benefit the residents of the new development.”]), or for its failure explicitly to exempt property owners whose land is part of a subdivision previously approved on condition that land or money be set aside for park purposes (see, 1982 Opns Atty Gen [Inf Opns] No. 84, at 227).
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. See, Cole, Constitutional Home Rule in New York: "The Ghost of Home Rule”, 59 St John’s L Rev 713 (1985); Note, Home Rule and the New York Constitution, 66 Colum L Rev 1145 (1966); Hyman, Home Rule in New York 1941-1965: Retrospect and Prospect, 15 Buffalo L Rev 335 (1965); Comment, Home Rule: A Fresh Start, 14 Buffalo L Rev 484 (1965); Asch, Municipal Home Rule in New York, 20 Brooklyn L Rev 201 (1954); Richland, Constitutional City Home Rule in New York, 54 Colum L Rev 311 (1954).

. Plaintiff urges that the Legislature has expressly prohibited the adoption of such a local law as Local Law No. 6. This contention merits little discussion. There is no express prohibition here.

. We note that other authorities have reached a similar conclusion (see, e.g., Matter of Sherman v Frazier, 84 AD2d 401, 409; Weinstein Enters. v Town of Kent, 135 AD2d 625, 626, lv denied 72 NY2d 801; North Bay Assocs. v Hope, 116 AD2d 704, 706, lv denied 68 NY2d 603; 1987 Opns Atty Gen [Inf Opns] No. 85, at 170; 1987 Opns Atty Gen [Inf Opns] No. 22, at 71; 1986 Opns Atty Gen [Inf Opns] No. 49, at 105; 1984 Opns Atty Gen [Inf Opns] No. 50, at 150; 1982 Opns Atty Gen [Inf Opns] No. 84, at 227; 1 Anderson, New York Zoning Law and Practice § 4.02, at 106-108 [3d ed]; Rice, 1988 Survey of New York Law: Zoning and Land Use, 40 Syr L Rev 641, 641-644; Rice, Municipal Home Rule Impact on Town and Village Zoning, NYLJ, Mar. 16, 1988, at 26, col 1; Cole, Home Rule Law and Local Zoning Power, 3 Mun Law 2 [Nov./Dec. 1986]; see also, Village of Savona v Soles, 84 AD2d 683 [Simons, J. P., and Hancock, Jr., J., participating]; and 1976 Opns Atty Gen 127 [finding power to zone in Municipal Home Rule Law § 10 (2)]).