Mariette Geldenhuys, Esq. Informal Opinion City Attorney No. 96-18 City of Ithaca 108 East Green Street Ithaca, N Y 14850
Dear Ms. Geldenhuys:
You have advised the mayor and city council that referenda were required to approve amendments to the city's code making appointments by the mayor of members of the planning board, board of zoning appeals and community police board subject to the consent of the city council. Based on this advice by the city attorney, the mayor has made appointments to the planning board without consent by the city council. You have asked for our opinion as to whether the advice given by your office is correct under State law. If referenda were required, you plan to take the necessary procedural steps to adopt properly the amendments. Under section 23(1) of the Municipal Home Rule Law, a local law subject to mandatory referendum becomes operative only if approved by a majority of the qualified electors voting on the proposition.
A local law dated April 6, 1994 amended a section of the Ithaca Municipal Code relating to the creation, organization, appointment of members and powers of the city's planning board. Under the former provision, appointments to the planning board were made exclusively by the mayor. The local law amended this provision to make the mayor's power to appoint members of the planning board subject to the consent of the common council.
A local law dated March 2, 1994 amended a section of the Ithaca Municipal Code relating to the creation, organization, appointment of members and powers of the city's board of zoning appeals. Under the former Code provision, appointments to the board of zoning appeals were to be made in accordance with the provisions of section 81 of the General City Law. At the time, section 81 provided that appointments to a city board of zoning appeals were to be made by the mayor or in a city having a city manager, in some cases by the manager. Therefore, under the former Code provision, Ithaca's mayor had exclusive power to make appointments to the zoning board of appeals. The local law amending the Code provision makes appointment by the mayor of members of the board of zoning appeals subject to the consent of the common council.
Under section 27 of the General City Law, reenacted by chapter 211 of the Laws of 1993, members of a city planning board are appointed by the mayor or other authorized appointing authority. Under section81 of the General City Law, reenacted by chapter 208 of the Laws of 1993, members of a city board of zoning appeals are appointed by the mayor or in a city having a city manager, in some cases by the city manager.
You informed us that the city's local laws specifically superseded chapters 208 and 211, including sections 27 and 81. Authority to supersede is relevant because without it State law would be paramount and the referendum issue may not be reached as to the validity of the above two local laws. The authority of the city to supersede State laws is well supported.[1] Local governments are constitutionally authorized to adopt and amend local laws, consistent with the Constitution or any general law, relating to their property, affairs or government and to delineated subjects. N Y Const, Art IX, § 2(c); see also, Municipal Home Rule Law § 10. Thus, a significant limitation on the enactment of local laws is the requirement that they be consistent with "general laws" enacted by the Legislature. A "general law" is
 [a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages.
N Y Const, Art IX, § 3(d)(1). Therefore, as to cities, a "general law" is one that applies in terms and in effect alike to all cities. See also, Municipal Home Rule Law § 2(5). In the home rule context, "general law" has a distinct definition, in that it is a reference to a State law applicable to all municipalities of a certain type. Matter of Smithtown v. Howell, 31 N.Y.2d 365, 375 (1972); see also, Matter of Johnson v. Etkin, 279 N.Y. 1, 5-6 (1938). Compare the different definition of "general law", which includes classifications of municipalities, outside the home rule context. See, Kelley v. McGee, 57 N.Y.2d 522 (1982) (matters of State concern); Hotel Dorset Company v. Trust for Cultural Resources, 46 N.Y.2d 358 (1978) and Farrington v. Pickney, 1 N.Y.2d 74 (1956) (under other provisions of the Constitution).
Neither section 27 nor 81 of the General City Law is a "general law" under the home rule definition in that neither is applicable to all cities. Therefore, provided that the local laws enacted by the City of Ithaca fall within the scope of its home rule law authority, they may supersede sections 27 and 81 of the General City Law. The Court of Appeals has decided that zoning and planning regulations fall within a municipality's home rule authority. Kamhi v.Town of Yorktown, 74 N.Y.2d 423 (1989). The Court refers to the grant of power to a municipality to enact local laws relating to the "government, protection, order, conduct, safety, health and well-being of persons or property therein". 74 N.Y.2d at 433; Municipal Home Rule Law §10(1)(ii)(a)(12). Also, the Court recognizes the authority of a municipality to adopt local laws to exercise the powers granted to it in the Statute of Local Governments. 74 N.Y.2d at 433. Section 10(6) of the Statute of Local Governments authorizes cities, villages and towns to adopt, amend and repeal zoning regulations. Further, regarding the provisions of the Ithaca local laws modifying the power of appointment to local boards, we note that a city may adopt and amend local laws dealing with the mode of selection and removal and other terms and conditions of employment of its officers and employees. Municipal Home Rule Law §10(1)(ii)(a)(1); see, Resnick v. County of Ulster, 44 N.Y.2d 279 (1978). Therefore, there is ample authority for the Ithaca local laws relating to the planning board and zoning board of appeals.
You also have informed us that in 1970 the city enacted a local law creating a community police board composed of three members appointed by the mayor. In 1984, the local law was amended whereby the board was enlarged from three to five members to be appointed by the mayor subject to the approval of the common council. These local laws fall within the authority of a municipality to adopt and amend local laws relating to the government, protection, order, conduct, safety, health and well-being of persons or property therein, the grant of police power. Municipal Home Rule Law § 10(1)(ii)(a)(12). Also, a municipality has authority to establish and define the terms and conditions of employment of local boards and positions. Id., § 10(1)(ii)(a)(1).
Your question is whether any of the three local laws adopted by the City of Ithaca were subject to a mandatory referendum. Under section 23(2)(f) of the Municipal Home Rule Law, a local law is subject to a mandatory referendum if it "[a]bolishes, transfers or curtails any power of an elective officer". The three local laws made the mayor's approval power subject to the consent of the common council. In our view, this change curtailed the appointing power of the mayor. His appointments to the three boards could be rejected by the common council. See, Morin v.Foster, 45 N.Y.2d 287 (1978); Matter of Fogerty v. Warden, 191 Misc. 916
(Sup Ct Orange Co), affd, 273 App. Div. 910 (2d Dept), affd, 297 N.Y. 963
(1948); Op Atty Gen (Inf) No. 88-33. Therefore, each of the three local laws was subject to a mandatory referendum under section 23(2)(f) of the Municipal Home Rule Law. The failure to conduct a referendum where one is required by law invalidates the local law. Morin v. Foster, supra. The city would have to adopt new local laws, and follow the procedure for conducting a mandatory referendum on each proposed local law.
You have suggested that a referendum may not be necessary for the amendments to the Ithaca Municipal Code regarding the appointment of planning board members in that section 27 of the General City Law provides for appointments "by the mayor or other duly authorizedappointing authority". Emphasis provided. The problem with this argument is that the legislative body of the city by local law purported to supersede section 27 of the General City Law. Therefore, section 27 cannot be considered in determining the referendum issue.
Additionally, you have asked, if the mayor favored the reduction in his power of appointment, whether this factor would impact on the referendum requirement. The Municipal Home Rule Law does not recognize such an exception. The referendum requirement protects not only elected officials but also preserves the elective franchise of the public whereby they have selected an official to hold office with a designated array of powers.
Regarding the community police board, in the event that a mandatory referendum is required, you have asked what appointment procedure should apply pending corrective action by the city council. In that the failure to hold a referendum, where required, invalidates a local law, the city should return to the appointment methods in force prior to that law's apparent enactment. The same is true regarding the other two local laws. You should consider, however, the applicability of reenacted sections27 and 81 of the General City Law.
We note that actions taken by persons appointed under invalid local laws are considered valid under the de facto officer doctrine. Ontario v.Western Finger Lakes Solid Waste Management Authority, 167 A.D.2d 848
(4th Dept 1990).
 Under the de facto officer doctrine, the acts of one who carries out the functions of a public office under color of authority are generally valid as to third persons and the public, and hence immune from collateral attack, notwithstanding irregularities in the manner in which the officer was appointed.
Id., p 849. The de facto officer doctrine is founded upon reasons of policy and necessity, in that it protects the interests and reasonable expectations of the public which must rely on the presumptively valid acts of public officials. Id.
We concur with the conclusion of the city attorney that referenda were required to approve the amendments to the city's code because they curtailed the power of appointment of the mayor.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
Victoria A. Graffeo
[1] As the primary drafter of chapters 208 and 211 of the Laws of 1993, the Legislative Commission on Rural Resources recognized "that any number of local governments may wish to supersede the state statute" concerning the composition of local boards. May 13, 1993 letter from Special Counsel, Legislative Commission on Rural Resources, to the Ithaca City Attorney.