100 N.Y.2d 395 (2003)
795 N.E.2d 619
764 N.Y.S.2d 64
In the Matter of JACK COHEN, Respondent,
v.
BOARD OF APPEALS OF THE VILLAGE OF SADDLE ROCK, Appellant.
In the Matter of FRANK RUSSO et al., Respondents,
v.
IRVING BLACK et al., Constituting the Board of Appeals of the Village of North Hills, Appellants.
Court of Appeals of the State of New York.
Argued June 3, 2003.
Decided July 2, 2003.
*396 Meyer, Suozzi, English & Klein, P.C., Mineola (A. Thomas Levin and Jayson J.R. Choi of counsel), for appellant in the first above-entitled proceeding.
*397 Respondent precluded in the first above-entitled proceeding.
James D. Cole, Albany, and Riele J. Morgiewicz for Association of Towns of the State of New York and another, amici curiae in the first above-entitled proceeding.
Meyer, Suozzi, English & Klein, P.C., Mineola (A. Thomas Levin and Jayson J.R. Choi of counsel), for appellants in the second above-entitled proceeding.
Albanese & Albanese LLP, Garden City (Bruce W. Migatz and Diana C. Prevete of counsel), for respondents in the second above-entitled proceeding.
Chief Judge KAYE and Judges SMITH, GRAFFEO and READ concur with Judge CIPARICK; Judge ROSENBLATT dissents and votes to reverse in a separate opinion.

*398 OPINION OF THE COURT
CIPARICK, J.
The issue in these separate appeals is whether the State preempted the field of area variance review when it enacted Village Law § 7-712-b (3). This question requires us to consider the right of localities to govern in matters of purely local concern in the context of the Legislature's transcendent interest in regulating matters of statewide importance (see Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 [1989]). We conclude that Village Law § 7-712-b (3) evinces an intent by the Legislature to preempt the field of area variance review.
Petitioners, Jack Cohen and the Russos (Frank and Jamie), applied to their respective Village authorities for area variances. Cohen sought a variance from certain Village of Saddle Rock zoning requirements as a prerequisite to obtaining a permit to build a single-family home on his unimproved oceanfront lot. The Russos applied for a height variance in order to install an 11-foot wrought iron gate in the driveway of their North Hills residence. In both cases, a Village building inspector denied the applications and petitioners appealed to their local Boards of Appeals. Both Boards denied the appeals, finding that petitioners failed to demonstrate "practical difficulties" or "undue hardship" in complying with existing zoning requirements.[1]
Cohen commenced a CPLR article 78 proceeding seeking to annul the determination of the Saddle Rock Board of Appeals, *399 claiming that the Board should have reviewed his application using the "balancing" test contained in Village Law § 7-712-b (3) (b), which had preempted the practical difficulty or undue hardship standard contained in the Village Code. Supreme Court agreed, invalidating section 150-24 (B) of the Saddle Rock Code, and annulled the determination of the Board. The court remanded the matter for reconsideration consistent with Village Law § 7-712-b (3). On appeal, the Appellate Division affirmed, concluding that the Legislature intended Village Law § 7-712-b to preempt enactment of conflicting local laws (297 AD2d 38 [2002]).[2] We now affirm.
The Russos followed a similar course, Supreme Court also granting their article 78 petition, annulling the determination of the North Hills Board of Appeals and remanding the matter to the Board for a new determination consistent with Village Law § 7-712-b. The Appellate Division affirmed (297 AD2d 381 [2002]), citing its contemporaneous decision in Matter of Cohen (supra). We now affirm.
As a matter of constitutional and statutory delegation, local governments are authorized to legislate in enumerated areas of local concern, subject to the Legislature's overriding interest in matters of statewide concern (see NY Const art IX; Statute of Local Governments). Although local laws that are inconsistent with state laws are generally invalid, the Municipal Home Rule Law allows incorporated villages to amend or supersede provisions of the Village Law as they relate to zoning matters. *400 Thus, a village has the power to amend or supersede "any provision of the village law relating to the property, affairs or government of the village * * * unless the legislature expressly shall have prohibited the adoption of such a local law" (see Municipal Home Rule Law § 10 [1] [ii] [e] [3]). The Village Law provision at issue here does not contain an express prohibition against amendment or supersession.
The supersession power, however, is subject to additional limitation. A village cannot supersede a state law where "a local law is otherwise preempted by State law" (Kamhi v Town of Yorktown, 74 NY2d 423, 430 [1989], citing Albany Area Bldrs. Assn., 74 NY2d 372 [1989]). Indeed,
"[t]he preemption doctrine represents a fundamental limitation on home rule powers. While localities have been invested with substantial powers both by affirmative grant and by restriction on State powers in matters of local concern, the overriding limitation of the preemption doctrine embodies `the untrammeled primacy of the Legislature to act * * * with respect to matters of State concern.' Preemption applies both in cases of express conflict between local and State law and in cases where the State has evidenced its intent to occupy the field" (Albany Area Bldrs. Assn., 74 NY2d at 377 [emphasis added and citations omitted]).
The Legislature may expressly state its intent to preempt, or that intent may be implied from the nature of the subject matter being regulated as well as the scope and purpose of the state legislative scheme, including the need for statewide uniformity in a particular area. A comprehensive and detailed statutory scheme may be evidence of the Legislature's intent to preempt (see Albany Area Bldrs. Assn., 74 NY2d at 377). This Court will examine whether the State has acted upon a subject and whether, in taking action, it has demonstrated a desire that its regulations should preempt the possibility of discordant local regulations (see Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 508 [1991]).
Village Law § 7-712-b (3), which deals with area variances, provides that "[a local] zoning board of appeals shall have the power, upon an appeal from a decision or determination of the administrative official charged with the enforcement of such local law, to grant area variances as defined herein. * * * In making its determination, the zoning board of appeals shall *401 take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant" (Village Law § 7-712-b [3] [a], [b]). The statute contains five additional factors to be considered on each review: (1) whether granting a variance will produce an undesirable change in the character of the neighborhood or create a detriment to nearby properties; (2) whether the benefit sought by the applicant can be achieved by some feasible method other than a variance; (3) whether the requested variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on physical or environmental conditions; and (5) whether the need for the variance was self-created (see Village Law § 7-712-b [3] [b]).
The Boards contend that the standards contained in the local zoning laws are authorized by the supersession power granted in the Municipal Home Rule Law. They argue that Village Law § 7-712-b (3) represents an effort by the Legislature to clarify and codify various common-law requirements for area variances that existed at the time of its enactment, but was never intended to supplant the power of localities to enact their own differentand possibly conflictingrequirements (see L 1991, ch 692). The Boards point out that the Legislature could have foreclosed local supersession either by placing an express prohibition in section 7-712-b, or by codifying the zoning appeal standards in another statute beyond the Villages' power to supersede, such as the General Municipal Law. This argument, also posed by the dissent, does not acknowledge the Legislature's inherent power to preempt, which is implicated here.
Inconsistency of a local zoning law with a state law of general application is, of course, insufficient to trigger the Legislature's preemption power for, if that were so, the supersession authority granted by the Municipal Home Rule Law would be meaningless (see Kamhi, 74 NY2d at 429-430). However, local authority to contravene laws of general application must yield to the superior interest of the Legislature when such interest has been demonstrated either by an express statutory prohibition or, more significantly in this case, by a finding of preemption (see Kamhi, 74 NY2d at 430, citing Albany Area Bldrs. Assn., 74 NY2d 372 [1989]).
The 1991 amendments to both the Town Law and Village Law, setting forth a standard of review for area variance applications, evince an intent by the Legislature to occupy the *402 field and bring a measure of statewide consistency to the variance application and review process (see L 1991, ch 692). Contrary to the Boards' argument, the history of these amendments does not suggest that they were intended merely to codify the disparate attempts in the courts to define "practical difficulty" and, to a lesser extent, "undue hardship"the earlier standards embodied in the Village and Town Laws. Rather, the statutory history supports petitioners' position that the Legislature intended to replace the confusing "practical difficulty" standard with a consistent test that weighed benefit to the applicant against detriment to the community, in addition to other enumerated factors. As stated in the Sponsors' Memorandum, "[t]his legislation is provided to recodify the laws which guide the function of zoning boards of appeal to encourage improved local understanding and facility in implementing the statute. Further, this legislation seeks to incorporate and standardize the universally acknowledged concepts of `use' and `area' variances in statute" (Sponsors' Mem, Bill Jacket, L 1991, ch 692).
The legislative history indicates that "the statute [L 1991, ch 692] was enacted to clarify existing law by setting forth readily understandable guidelines for both Zoning Boards of Appeal and applicants for variances and to eliminate the confusion that then surrounded applications for area variances" (Matter of Sasso v Osgood, 86 NY2d 374, 383 [1995]).[3] Numerous sources in the legislative history support the conclusion we reached in Sasso and its natural extension in the appeals before us: faced with the turmoil and uncertainty that had plagued the law in this area, the Legislature intended to occupy the field and thus preempt local supersession authority.
By imposing a statewide standard for area variance review, Village Law § 7-712-b (3) does not impermissibly attempt to usurp the local zoning authority or violate home rule powers. Localities remain free to enact zoning regulations in the best interests of the health, safety and character of their communities. A uniform standard for area variance review, however, has clear advantages. Property owners and zoning practitioners around the state will benefit from a better understanding of the standards for a variance, notwithstanding *403 the unique zoning requirements of each individual locality (see Sponsors' Mem, Bill Jacket, L 1991, ch 692). And far from being an encroachment on local zoning authority, the application of a uniform standard ensures that each locality's zoning decisions will be reviewed consistently by the courts without being subject to the vagaries of a standard elusive of easy definition or clear application (see Matter of Sasso, 86 NY2d at 380-381; see also Rice, Practice Commentaries, McKinney's Cons Laws of NY, Book 63, Village Law § 7-712-b). Thus, in this critical area of overlap between state and local authority, traditional respect for the primacy of state interest requires that the will of the Legislature prevail over the desires of each individual locality.
Accordingly, in each case the order of the Appellate Division should be affirmed, with costs.
ROSENBLATT, J. (dissenting).
I disagree with the Court's holding that the State has preempted the field. Courts often are called upon to discern whether in a particular case the State has elected to preempt, and where the State has not made its intention clear, difficulties arise. As a result, we have at times concluded that the State has impliedly intended to preempt, even though it did not say so expressly. Here, however, there is not the slightest uncertainty. In the plainest possible terms, Municipal Home Rule Law § 10 (1) (ii) (e) (3) provides that there will be no preemption "unless the legislature expressly shall have prohibited the adoption of such a local law" (emphasis added). Because the legislation flatly says "no," I cannot accept petitioners' argument that "no" means "yes" ... or "maybe."
The effect of Municipal Home Rule Law § 10 isor, rather, should bean easily applied rule: Village ordinances superseding the Village Law are valid absent express language in the Village Law precluding supersession. That clear rule should not be judicially abolished or replaced with an amorphous "implied preemption" test, under which village ordinances can be subjected to endless litigation disputing whether a particular regulatory scheme in the Village Law is comprehensive enough to imply state preemption. The parties concede that Village Law § 7-712-b lacks any express prohibition on supersession, but the Court nonetheless forbids supersession, concluding that the Village Law was intended to be exhaustive. This is unwise. Future cases attempting to address an "implied preemption" claim will find answers elusive and debatable. *404 Moreover, villages and their counsel can no longer be confident that an attempted supersessionguaranteed by the Municipal Home Rule Lawwill be upheld.
It seems to me that this disorder was precisely the harm the Legislature sought to prevent by enacting Municipal Home Rule Law § 10. Ironically, petitioners argue that implied preemption will minimize confusion over the standards to be used in adjudicating variance applications. To the contrary, implied preemptionin the face of an express preemption statuteunsettles the law of village supersession and creates confusion where the Legislature was clear.
Albany Area Bldrs. Assn. v Town of Guilderland (74 NY2d 372 [1989]) does not aid petitioners. There, we invalidated a local law that required builders to pay for highway construction caused by the increased traffic associated with new developments. In striking down the enactment, we were careful to note that it violated a detailed highway funding scheme reflected not only in the Town Law (identical for present purposes to the Village Law), but, critically, also in the State's Highway Law. Towns and villages have no authority, in the Municipal Home Rule Law or elsewhere, to supersede provisions of the Highway Law; Municipal Home Rule Law § 10 allows towns and villages to supersede provisions of only the Town Law and Village Law. Albany Area Builders, therefore, does not control a case where, as here, a locality attempts to supersede a state enactment contained entirely within the Village Law.
Kamhi v Town of Yorktown (74 NY2d 423 [1989]), decided the same day as Albany Area Builders, confirms that localities may supersede provisions of the Town Law and Village Law. The Court recognized that Municipal Home Rule Law § 10 allows the type of supersession at issue in that case, noting that a contrary conclusion would "give little force to the independent grants of power specified in the Municipal Home Rule Law and the Statute of Local Governments" (id. at 433).[1]Kamhi did not forbid localities from enacting laws inconsistent with state laws; in fact, it considered the possibility and explicitly accepted inconsistency as basic to the power of supersession. Statewide uniformity (in variance applications and otherwise) may have some virtues, but the Legislature has *405 seen greater virtue in allowing villages to do as they see fit and to act inconsistently unless explicitly prohibited. Petitioners claim that there should be uniformity based on implied preemption. The cogent language in Kamhi rejected that notion by recognizing that "inconsistency is a premise of the supersession authority, for there is otherwise little need of the power to amend or supersede State law" (id. at 430).[2]
The majority relies on Matter of Sasso v Osgood (86 NY2d 374 [1995]) to explain that the Legislature saw a problem with localities applying the "practical difficulties" standard inconsistently. Undisputedly, the Village Law § 7-712-b revision made the "practical difficulties" standard more consistent. But that is not the point. All of the sections in the State's Village Law create uniformity. Where the Legislature has granted villages the right to act inconsistently, it is erroneous, and circular, to reason that consistency demands implied preemption. Sasso, moreover, was not a preemption or supersession case, and the Court did not say anything that would call into question the authority of local governments to revise Village Law § 7-712-b if they followed the procedures of Municipal Home Rule Law § 10. The Village Law revision, lacking language expressly prohibiting supersession, creates only a default rule: Localities can have the multifactor test of section 7-712-b if they desire, but if they prefer to replace the Village Law test with the abstract "practical difficulties" standard, the Municipal Home Rule Law gives them that option.
Here, after the Villages of North Hills and Saddle Rock properly exercised their supersession authority under Municipal Home Rule Law § 10, I do not think it is appropriate for us to debate whether the State should allow villages to apply differing standards for adjudicating variance disputes. The State has already given us its answer by enacting an express preemption statute.
It is not as though the State is uncertain when it aims to prohibit supersession. In other instances, the Legislature has put some segments of the Village Law beyond the reach of villages by expressly prohibiting supersessionprecisely the action contemplated by Municipal Home Rule Law § 10. Village Law § 5-532, for example, provides in unmistakable clarity, "No local law shall be adopted changing, amending or superseding any of the provisions of this article." Village Law article *406 5, in turn, regulates the taxation and budgeting powers of villages. If any system of regulation is sufficiently comprehensive as to justify implied preemption, it would be these regulations. And yet the Legislature, recognizing implied preemption as incompatible with the Municipal Home Rule Law, made its prohibition express and unambiguous.
Village Law § 9-916 similarly bars supersession of the Village Law article regulating the referendum process (which would appear to be sufficiently comprehensive to warrant implied preemption under the majority's analysis), and section 10-1006 (14) prohibits villages from altering the rules governing the membership of volunteer fire companies. Each of these sections repeats the short express prohibition of supersession found in section 5-532. The Legislature obviously knew how to comply with Municipal Home Rule Law § 10's express prohibition requirement. By choosing not to write an express prohibition in section 7-712-b, the State demonstrated that it did not intend to preempt inconsistent local laws dealing with zoning variances.
Whatever may be said for implied preemption when the Legislature is silent, it has no place where the Legislature has spoken as loudly and clearly as it has here. It has told us in no uncertain terms that express prohibition is necessary to defeat villages' supersession authority. Because there is no such language here, I would hold that the village laws were not preempted, and I would therefore reverse the orders of the Appellate Division.
In each case: Order affirmed, with costs.
NOTES
[1] Pertinent provisions of Code of the Village of Saddle Rock § 150-24 provide:

"A. Section 7-712-b, Subdivisions 2 and 3, of the New York State Village Law are hereby repealed and superseded in their application to the Village of Saddle Rock.
"B. The Board of Appeals may grant an area or dimensional variance from the zoning regulations contained in this chapter only upon a showing of practical difficulty or unnecessary hardships in the way of carrying out the provisions of such regulations."
Similar language in Code of the Village of North Hills § 174-31.2 provides:
"A. Pursuant to authority granted to the village in the Municipal Home Rule Law, § 7-712-b of the Village Law of the State of New York is hereby repealed in its application to the Village of North Hills. * * *
"D. The Board of Appeals shall have the power upon an appeal to grant area variances only where the applicant shall demonstrate that there are practical difficulties in the way of carrying out the provisions of this chapter."
[2] Cohen has since sold the property, rendering the variance issue moot. However, the declaratory relief grantedinvalidation of Saddle Rock's area variance lawpresents a live controversy.
[3] In Sasso, we determined that zoning boards of appeals were required to review variance applications using the balancing test contained in Town Law § 267-b. The language of the Town Law is identical to that of Village Law § 7-712-b as it applies to the standard of review upon denial of a variance.
[1] Kamhi invalidated the local law, but only on the ground that the locality had not followed the appropriate procedures in attempting what would otherwise have been a valid supersession (see 74 NY2d at 434-435).
[2] See also id. ("When municipalities act within their supersession authority, even local laws that are inconsistent with the Town Law may be valid.")