In an action, inter alia, for a judgment declaring that Local Law No. 6 (2008) of the Village of Woodbury is preempted by state law and, therefore, invalid, the Village of Woodbury appeals from an order and judgment (one paper) of the Supreme Court, Orange County (Ecker, J.), dated March 19, 2012, which granted the plaintiff’s motion for summary judgment on the complaint and declared that the law is preempted by state law and, therefore, invalid.
Ordered that the order and judgment is affirmed, with costs.
In 2008, the Village of Woodbury passed Local Law No. 6 (2008) (hereinafter the Local Law), which states: “The removal of groundwater, either directly or after storage, for use outside of the incorporated Village of Woodbury is expressly prohibited, except by intermunicipal agreement with the Village Board of Trustees.” In passing the Local Law, the Village board made a legislative finding that, among other things, the law was necessary to “preserve and protect the limited natural water resource *700 essential to and shared by Village residents, both as to quality and quantity.” A violation of the Local Law is a misdemeanor.
The plaintiff, Woodbury Heights Estates Water Co., Inc., is a private water-works corporation formed pursuant to article 4 of the Transportation Corporations Law to provide water within the Village. The plaintiff commenced this action, inter alia, for a judgment declaring that the Local Law is preempted by state law and, therefore, invalid. According to the complaint, the plaintiff currently operates wells and storage tanks which it utilizes to deliver water to 67 single-family homes in the Wood-bury Heights Estates subdivision, located within the Village. The plaintiff contended that the Local Law would interfere with its ability to transfer water to the neighboring Town of Monroe pursuant to a “certificate of extension” that it obtained and filed pursuant to Transportation Corporations Law § 46. The Supreme Court granted the plaintiffs motion for summary judgment on the complaint and declared that the Local Law was preempted by state law and, therefore, invalid.
“As a matter of constitutional and statutory delegation, local governments are authorized to legislate in enumerated areas of local concern, subject to the Legislature’s overriding interest in matters of statewide concern” (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395, 399 [2003], citing NY Const art IX). “A village cannot supersede a state law where a local law is otherwise preempted by State law” (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d at 400 [internal quotation marks omitted]). “The preemption doctrine represents a fundamental limitation on home rule powers” (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 [1989]). “Local lawmaking power under the supersession authority is of course in all instances subject to the State’s transcendent interest where the Legislature has manifested such interest by expressly prohibiting a local law, or where a local law is otherwise preempted by State law” (Kamhi v Town of Yorktown, 74 NY2d 423, 430 [1989] [citations omitted]). “Preemption applies both in cases of express conflict between local and State law and in cases where the State has evidenced its intent to occupy the field” (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d at 377). Field preemption occurs where (1) a “state statute explicitly avers that it preempts all local laws on the same subject matter,” (2) “a declaration of state policy evinces the intent of the Legislature to preempt local laws on the same subject matter,” and (3) “the Legislature’s enactment of a comprehensive and detailed regulatory scheme in an area in controversy is deemed to demonstrate an intent to *701 preempt local laws” (Matter of Chwick v Mulvey, 81 AD3d 161, 169-170 [2010]). Here, provisions of the Transportation Corporations Law and the Environmental Conservation Law, taken together, clearly establish that the State Legislature intended to preempt local governments in regulating both the withdrawal and transfer of water resources.
A water-works corporation, which may be formed pursuant to the Transportation Corporations Law, “is a corporation organized to supply water by mains or pipes to any of the cities, towns or villages in this state, and the inhabitants thereof” (Transportation Corporations Law § 40). A water-works corporation is formed by delivering a certificate of incorporation to the department of state listing, inter alia, “the cities, towns and villages to be supplied with water, and that the consent of the authorities of such cities, towns and villages required by this chapter has been obtained, and that such consent has been annexed thereto” (Transportation Corporations Law § 3 [b] [3]). A water-works corporation has the power “[t]o lay and maintain its pipes and hydrants for delivering and distributing water in any street, highway or public place of any city, town or village in which it has obtained the consent required by [Transportation Corporations Law § 41]” (Transportation Corporations Law § 43 [1]). Additionally, evidencing the broad powers of water-works corporations, for purposes of accessing a source of water or transferring water to nonadjoining municipalities where it has permission to distribute water, a waterworks corporation has the power “[t]o lay its water pipes in any streets or avenues or public places of an adjoining city, town or village” (Transportation Corporations Law § 43 [2]), even over the objection of a municipality that has not authorized the water-works corporation to sell water within its territory (see Rochester & Lake Ontario Water Co. v City of Rochester, 176 NY 36 [1903]; Village of Pelham Manor v New Rochelle Water Co., 143 NY 532 [1894]). By their nature, water-works corporations are public utilities, and once formed, are statutorily obligated to supply “pure and wholesome water” at “reasonable rates” (Transportation Corporations Law § 42), and are regulated by the Public Service Commission (see Public Service Law art 4-B; see also 108 NY Jur 2d, Water § 506).
As relevant to this case, the Transportation Corporations Law permits water-works corporations to extend their service area to neighboring municipalities by entering “into a contract with the authorities of any city, town or village not mentioned in its certificate of incorporation, but situated in the same county as the city, towns or villages mentioned therein or in an *702 adjoining county” (Transportation Corporations Law § 46). Once the consent of the new municipality is obtained, the waterworks corporation may file a “certificate of extension” permitting it to “thereupon supply any such city, town or village with water in the same manner and with the same rights and subject to the same requirements as if it had been named in the original certificate of incorporation” (Transportation Corporations Law § 46). Notably, the statutory procedure for obtaining a certificate of extension does not require the water-works corporation to obtain the consent or permission of the municipality where it was originally incorporated, an omission which we must conclude the Legislature intended (see McKinney’s Cons Laws of NY, Book 1, Statutes § 240) and which comports with the long-recognized policy in favor of the extension of water resources to less-advantageously situated municipalities: “The legislature did not propose that one municipality, which happened to be more favorably situated, should have the power to prevent another and adjoining municipality from obtaining water, where it becomes necessary to pass through the territory of such adjoining municipality to reach the source of supply” (Rochester & Lake Ontario Water Co. v City of Rochester, 176 NY at 44). Accordingly, we conclude that the Legislature manifested an intent to preempt local laws which have the effect of prohibiting a water-works corporation from transferring water from one municipality to another (see Matter of Chwick v Mulvey, 81 AD3d 161 [2010]; Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372 [1989]).
Further, to the extent that the Local Law was enacted, either in purpose or effect, as a measure to regulate withdrawals of groundwater, it is further preempted by article 15 of the ECL. The terms “waters,” as used in ECL article 15, is expansive and includes all surface and underground water within the state’s territorial limits (see ECL 15-0107 [4]). ECL article 15 states: “The sovereign power to regulate and control the water resources of this state ever since its establishment has been and now is vested exclusively in the state of New York, except to the extent of any delegation of power to the United States” (ECL 15-0103 [1] [emphasis added]; see Williams v City of Schenectady, 115 AD2d 204, 205 [1985] [“the legislative purpose of ECL article 15 is to give the State exclusive control of water sources”]). The Legislature declared it to be the public policy of the state that: “The regulation and control of the water resources of the state of New York be exercised only pursuant to the laws of this state” (ECL 15-0105 [1] [emphasis added]), and the Department of Environmental Conservation (hereinafter the DEC) is given jurisdiction “in any matter affecting the *703 construction of improvements to or developments of water resources for the public health, safety or welfare, including but not limited to the supply of potable waters for the various municipalities and inhabitants thereof’ (ECL 15-0109).
Subject to certain statutory exceptions, any person or corporation “engaged in, or proposing to engage in, the operation of a water withdrawal system with a capacity of greater than or equal to the threshold volume,” must first apply to the DEC and obtain a permit in order to, among other things, “make a water withdrawal from an existing or new source or an increased water withdrawal from an existing permitted source” (ECL 15-1501 [1] [a]), “commence or undertake the construction of any works or projects in connection with the proposed withdrawal” (ECL 15-1501 [1] [c]), or “extend its supply or distribution mains into any new water service area or extension that has not been approved by the department or a predecessor commission” (ECL 15-1501 [1] [d]). Notably, the permitting process accounts for the limitations on water resources that the Village in this case sought to protect through enactment of the Local Law. Applications for permits to withdraw water must include, among other things, “a statement of the need for and the reasons why the proposed source or sources of supply were selected among the alternative sources which are or may become available and the adequacy of the supply selected” (ECL 15-1503 [1] [e]). Further, and perhaps most relevant to the issue at bar, in deciding whether to grant or deny such a permit, the DEC is statutorily obligated to consider, among other things, whether “the project is just and equitable to all affected municipalities and their inhabitants with regard to their present and future needs for sources of potable water supply” (ECL 15-1503 [2] [c]; see 6 NYCRR 601.6), and whether “the proposed water withdrawal will be implemented in a manner to ensure it will result in no significant individual or cumulative adverse impacts on the quantity or quality of the water source and water dependent natural resources” (ECL 15-1503 [2] [fl; see Town of Hempstead v Flacke, 82 AD2d 183, 189 [1981] [upholding the DEC Commissioner’s determination to deny a permit to an applicant to deepen certain wells on the ground that the communities’ “long-term needs” for water outweighed the applicant’s “short-term need for non-potable water”]; see also Matter of Swan Lake Water Corp. v Water Resources Commn., 31 AD2d 44, 47 [1968]). The foregoing demonstrates that the Legislature, through its explicit declarations of state policy and enactment of a detailed regulatory scheme, evinced an intent to preempt local laws, like the one in this case, which regulate the withdrawal of groundwater (see Matter of Chwick v Mulvey, 81 *704 AD3d at 161; Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d at 372).
We reject the Village’s contention that Village Law § 11-1120, which authorizes a Village board of water commissioners, in its discretion, to sell water outside of a water district, is a legislative delegation of power authorizing the Local Law. Rather, the context of Village Law article 11, read in its entirety, makes clear that Village Law § 11-1120 is applicable only to village-owned water-works (see Village of Webster v Town of Webster, 270 AD2d 910, 910-912 [2000]; Heritage Co. of Massena v Village of Massena, 151 Misc 2d 587 [Sup Ct, St Lawrence County 1992], affd 192 AD2d 1039 [1993]) and, therefore, has no bearing on the issue at bar.
We further reject the Village’s contention that this matter is not ripe for adjudication. The plaintiff submitted evidence in support of its motion that it obtained the written consent of the neighboring Town of Monroe to provide a proposed housing subdivision in Monroe with water and filed a “ ‘certificate of extension,’ ” which authorizes it to “thereupon supply [the Town of Monroe] with water in the same manner and with the same rights and subject to the same requirements as if it had been named in the original certificate of incorporation” (Transportation Corporations Law § 46). Therefore, injury to the plaintiff by virtue of the Local Law is “present, rather than hypothetical, contingent or remote” and, therefore, the matter presents a judicial controversy ripe for adjudication (American Ins. Assn. v Chu, 64 NY2d 379, 383 [1985], cert denied 474 US 803 [1985]).
Accordingly, the Supreme Court properly declared that the Local Law is preempted by state law and, therefore, invalid. Rivera, J.E, Balkin, Chambers and Sgroi, JJ., concur. [Prior Case History: 37 Mise 3d 180.]